**BOUTIN GIBSON DI GIUSTO HODELL INC.**
ROBERT D. SWANSON, SBN 162816
MICHAEL E. CHASE, SBN 214506
555 Capitol Mall, Suite 1500
Sacramento, CA  95814
Telephone (916) 321-4444
Facsimile (916) 441-7597

Attorneys for plaintiff BANK OF SACRAMENTO

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK OF SACRAMENTO, a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>STEWART TITLE GUARANTY COMPANY, a Texas corporation,<br><br>　　　　　Defendant. | **Case No.:  2:09-cv-00771 JAM KJM**<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF; TORTIOUS BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |

Plaintiff BANK OF SACRAMENTO alleges:

### GENERAL ALLEGATIONS

1.　　Plaintiff BANK OF SACRAMENTO ("the Bank") is a California banking corporation with its principal place of business in the County of Sacramento, California.

2.　　On information and belief, defendant STEWART TITLE GUARANTY COMPANY ("Insurer") is a corporation licensed to transact insurance business in California, and doing business in California.  On information and belief, Insurer is incorporated in Texas and has an office in Houston, Texas, and a series of affiliated companies located in California.

3.　　Insurer issued to Bank of Sacramento in Sacramento, California a written title insurance policy, Policy No. M-2229-000825979 ("the Policy").  The Policy states the named

143929.1

insured is the Bank.  A copy of the Policy is attached as Exhibit A hereto and incorporated herein by reference.  The Bank purchased the Policy in connection with a deed of trust on certain real property ("the Property") that the Bank would be receiving to secure a loan made to R&B Land Investments, LLC ("R&B") to purchase the Property from Andrews Dixon LLC ("Andrews Dixon").  In the Policy, the Insurer insured, among other things, that the Bank's interest in the Parcel was junior only to excluded senior interests which were listed in the Policy ("Excluded Senior Interests").  In its initial form the Policy listed in Schedule B, Part II "The Terms, Conditions and Provisions as contained in the Agreement entitled "Memorandum of Option Agreement", by and between Andrews Dixon, LLC, a limited liability company, and R&B Land Investments, LLC, a California Limited Liability Company, Dated July 11, 2006, recorded July 17, 2006, Instrument No. 2006-00089600, Official Records" (hereinafter "Reference to Option").

4.      The Bank has been named as a defendant in an action entitled *Andrews Dixon LLC v. Bank of Sacramento et al.*, Case No. FCS030940 ("the Andrews Dixon Action").  The Andrews Dixon Action is filed in Solano County.

5.      The Andrews Dixon Action alleges the Bank's interest in the Property is subordinate to Andrews Dixon's interest in the Property based on certain provisions in an agreement between Andrews Dixon and R&B which provided that R&B would convey the Property to Andrews Dixon ("the Claimed Senior Interest").

6.      In the Policy, the Claimed Senior Interest was not listed as one of the Excluded Senior Interests.

8.      By letter dated February 21, 2008, the Bank's counsel sent a letter tendering the defense of the Andrews Dixon Action to Insurer under the Policy on behalf of the Bank and requesting indemnification.

9.      On March 20, 2008, the Insurer accepted in writing the tender of defense of the Andrews Dixon Action and indemnification "without a reservation of rights."

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF;
TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

143929.1

10.     Upon accepting the Bank's tender of defense, the Insurer decided to control the defense of the case, hired counsel of its choosing, specifically the law firm of Bardellini, Straw, Cavin & Bupp, LLP ("the Bardellini Firm") to represent the Bank in defense of the Andrews Dixon Action.  In connection with the Bardellini Firm's representation of the Bank, the Bank's representatives and counsel had innumerable conversations and emails and several meetings with an attorney from the Bardellini Firm in and during which the Bank, its employees and its counsel made statements which the Bank understood would be protected by the attorney-client privilege.

11.     Subsequently, in April 2008 Insurer's claims representative left a voice mail for Bank's counsel indicating that the Stewart Title Guaranty understood there was a possibility the Bank of Sacramento could be held to have "actual knowledge" of the Option Agreement, and indicated that "of course that's going to kick in all sorts of coverage issues."

12.     Bank immediately protested Insurer backtracking on its express written commitment to defend without a reservation of rights and further protested the Insurer's use of improperly obtained privileged information.

13.     On April 24, 2008, the Insurer apologized for its improper conduct and re-confirmed in writing that its acceptance of defense of the Andrews Dixon Action and indemnification was "without a reservation of rights."

14.     Upon information and belief, the Bardellini Firm had numerous conversations with the Insurer in the course of defending the Bank in the Andrews Dixon Action, prepared witnesses for depositions and represented the Bank and its employees at depositions in the Andrews Dixon Action.  Insurer controlled every aspect of the defense including filing the Reply Brief in the Motion to Expunge and representing the Bank at oral arguments.

15.     In August 2008, the Court in the Andrews Dixon Action issued an order ("Motion to Expunge Order") denying a motion filed on behalf of the Bank seeking to expunge a *lis pendens* that had been recorded as to the Property.

3
**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF;**
**TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

143929.1

16.    In February 2009, the Court issued an order overruling a demurrer filed on behalf of the Bank arguing that Andrews Dixon had failed to state any cause of action against the Bank.

17.    On March 16, 2009, without any forewarning from the Insurer, the Insurer's counsel, Michael B. Geibel, Esq., sent a letter to the Bank in which he stated, among other things:

    a.    the Insurer hereby reserves its right to deny coverage to the Bank in the Andrews Dixon Action, including the duty to indemnify the Bank, based on the Court's Motion to Expunge Order issued in August 2008;

    b.    the Bank must designate new legal counsel to defend it in the Andrews Dixon Action within 30 days;

    c.    the Insurer will no longer pay for the Bardellini Firm to defend the Bank in the Andrews Dixon Action;

    d.    the Insurer strongly suggests that it will pay no more than $250 per hour for attorney's fees incurred in defense of the Bank;

    e.    the Bardellini Firm will substitute out as counsel for the Bank as soon as the Bank designates new legal counsel; and

    f.    the Insurer is filing a declaratory relief action against the Bank to seek a judicial determination as to coverage, thus indicating that the Insurer believes a controversy exists between the Bank and the Insurer concerning whether coverage exists.

18.    Mr. Geibel's letter stated that the Bank was retracting its earlier representation that it would defend and indemnify without a reservation of rights.  It stated that Insurer was changing its position because, among other things, of new information, including deposition testimony of Bank employees and the ruling to the Motion to Expunge.

4
**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF;
TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

143929.1

19.   From the time the Insurer and its panel counsel had actual notice of the Motion to Expunge Order in August 2008, though March 16, 2009 Insurer continued to control the defense of Bank in the Andrews Dixon Action, continued to insinuate itself in and have complete access to attorney client privileged communications of the Bank and its panel counsel attorneys, the Bardellini Firm.   During this time period, without putting the Bank or the Bardellini Firm on notice, Insurer began to surreptitiously explore and plot retraction of its waiver of all policy defenses (i.e. defense without a reservation of rights) and to review attorney client privileged communications between the Bank and the Bardellini firm.

20.   On information and belief, the Insurer knew the Bank would rely on the representation that it was defending without a reservation of rights in order to allow itself to be represented by a law firm not of its own choosing, and that but for such representation, the Bank would have chosen its own independent counsel to represent it in the Andrews Dixon Action.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

21.   The Bank repeats and realleges the allegations in paragraphs 1 though 20 above as if fully set forth herein.

22.   On information and belief, the Insurer has breached its obligations to the Bank under the Policy in a variety of respects, including but not limited to the following:

    a.   Failing to defend the Bank with un-conflicted counsel in the Andrews Dixon Action;

    b.   Failing to adequately investigate the claims against the Bank;

    c.   Failing to properly handle the claims against the Bank;

    d.   Misrepresenting that it would defend without a reservation of rights;

    e.   Misrepresenting the terms of the policy and the information provided to Insurer prior to and at the time of issuance of the policy;

5
**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF; TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

143929.1

f.      Gaining access to attorney-client privileged communications on the false pretense that it was defending without a reservation of rights, and further inappropriately and in bad faith misusing information gained through this improper access in order to attempt to subvert the Bank's right to coverage under the policy; and

g.      Continuing to use panel counsel and inappropriately accessing attorney-client privileged communications, even after it began scheming to assert coverage defenses it knew it had already waived.

23.    The Bank performed all conditions, covenants, and agreements required of it under the Policy.

24.    As a direct and proximate result of Insurer's breach of the Policy, the Bank has suffered and will continue to suffer monetary damages in an amount subject to proof.

**SECOND CAUSE OF ACTION**

**(Declaratory Relief)**

25.    The Bank repeats and realleges the allegations in paragraphs 1 though 24 above as if fully set forth herein.

26.    There exists an ongoing, active and material dispute between Insurer and the Bank as to Insurer's duty to defend the Bank in the Andrews Dixon Action under the Policy and whether Insurer has waived its policy exclusions and whether Insurer is estopped by its conduct to assert policy defenses.  Because Insurer indicated it was filing a declaratory relief action, the Bank filed this suit to seek a determination by the Court of Insurer's duty to defend it in the Andrews Dixon Action.  The Bank contends Insurer has a duty under the Policy to defend it in the Andrews Dixon Action.  The Bank is informed and believes that the Insurer denies it has any duty to defend or indemnify the Bank and that Insurer has in fact filed an action for declaratory relief in order to withdraw from the defense of the Andrews Dixon Action.  Bank further asserts that Insurer has waived the right to and is also estopped by its misrepresentations

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF; TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

143929.1

1 │ and other conduct from the right to assert exclusions and other policy defenses.  The Bank is

2 │ informed and believes that the Insurer denies it has waived its rights or is estopped from

3 │ asserting policy exclusions.

4 │     27.    There is no practical means of resolving these ongoing active and material

5 │ disputes between the parties to this suit in the absence of a declaratory determination of the

6 │ respective rights and duties of the parties hereto by this Court.

7 │ **THIRD CAUSE OF ACTION**

8 │ **(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

9 │     28.    The Bank repeats and realleges the allegations in paragraphs 1 though 27 above

10 │ as if fully set forth herein.

11 │     29.    Insurer's conduct described above, including, but not limited to,

12 │ misrepresentations, infringing on attorney-client privileged communications by misrepresenting

13 │ that it had waived it policy defenses and agreed to defend without a reservation of rights,

14 │ scheming to negate coverage and withdraw from the defense while continuing to access

15 │ attorney-client privileged communications through the use of panel counsel, not disclosing to

16 │ the Bank that Insurer was intending to negate coverage while at the same time knowing that

17 │ Bank was continuing to disclose attorney-client privileged communications to Insurers' panel

18 │ counsel on the representation that Insurer was continuing to defend without a reservation of

19 │ rights, and reserving rights after more than a year of litigation in which it completely controlled

20 │ the defense of the Andrews Dixon Action.  Insurer's filing of a declaratory relief action against

21 │ the Bank in the United States District Court for the Eastern District of California, Case No.

22 │ 02:09-cv-00766 JAM KJM, when it had expressly, knowingly and in writing agreed to defend

23 │ and indemnify the Bank without a reservation of rights on two occasions, misrepresenting

24 │ certain facts in the Declaratory Relief action in order to try to accomplish its scheme of

25 │ abandoning its insured is unreasonable. *Dalrymple v. United Services Auto. Ass'n* (1995) 40

26 │ Cal.App.4th 497, 515.

7

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF;
TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

143929.1

30.     Implied in the Policy is a covenant of good faith and fair dealing pursuant to which, among other things Insurer is required to give the interests of the Bank equal consideration with its own interests, and to deal fairly, in good faith and openly with the Bank. In doing the conduct described above, including that described in paragraphs 22 and 29, above, Insurer breached the duty of good faith and fair dealing.

31.     On information and belief Insurer breached the implied covenant of good faith and fair dealing arising from the Policy and is liable to the Bank for all detriment and damages proximately caused by such breach, which detriment and damages is an amount equal at least to all attorney's fees and costs incurred by the Bank in the Andrews Dixon Action which have not been reimbursed, consequential damages, attorney fees under *Brandt v. Superior Court* (1985) 37 Cal.3d 813, and other monetary damages, all in an amount to be proven at trial.

32.     On information and belief the aforesaid breaches of the implied covenant of good faith and fair dealing were intentional, done with conscious disregard for the rights of the Bank, and were willful, malicious, oppressive, despicable, nefarious, deceitful and designed to injure the Bank, and deny it benefits due to it under the Policy.   Accordingly, the Bank is entitled to punitive and exemplary damages in an amount sufficient to punish Insurer for its wrongdoing, and to deter similar conduct in the future.

**PRAYER**

WHEREFORE, the Bank prays relief against Insurer as follows:

A.     For declaration by the Court as to the respective rights and duties of all the parties with respect to the Policy, and specifically a declaration of Insurer's duty to defend the Bank in the Andrews Dixon Action;

B.     For damages against Insurer according to proof for breach of contract including full costs of defense incurred by the Bank in its defense of the Andrews Dixon Action, and any amount the Bank pays in settlement in the Andrews Dixon Action;

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF;
TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

143929.1

1       C.     Against Insurer, for attorneys fees incurred in bringing this action pursuant to

2  Insurance Code § 1619 and *Brandt v. Superior Court* (1985) 37 Cal.3d 813;

3       D.     For prejudgment interest in an amount to be proved at time of trial;

4       E.     As against Insurer, punitive damages in an amount sufficient to deter and make

5  an example of Insurer;

6       F.     Costs of suit herein; and

7       G.     For such other relief as the court may deem just and proper.

9  Dated: March 31, 2009.                 BOUTIN GIBSON DI GIUSTO HODELL INC.

11                            By:   /s/ Robert D. Swanson

12                                  Robert D. Swanson

                                    Michael E. Chase

13                                  Attorneys for Bank of Sacramento

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF; TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

143929.1

"EXHIBIT A"

POLICY OF TITLE INSURANCE ISSUED BY



SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, STEWART TITLE GUARANTY COMPANY, a Texas corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material;
   (a) arising from any improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens;
9. Any assessments for street improvements under construction or completed at Date of Policy not excepted in Schedule B which now have gained or hereafter may gain priority over the lien of the insured mortgage.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

In witness whereof, Stewart Title Guaranty Company has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.

**stewart** · title guaranty company

_____
Chairman of the Board

_____
President

_____
Authorized Countersignature
PLACER TITLE COMPANY
Agent ID:  050200

ALTA LOAN POLICY (10-17-92)
With ALTA Endorsement - Form 1 Coverage
STG.CA.AL92

| Policy Serial No. | M-2229-000825979 |
|---|---|

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

(a) created, suffered, assumed or agreed to by the insured claimant;

(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

(c) resulting in no loss or damage to the insured claimant;

(d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or

(e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7.  Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

(a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

(b) the subordination of the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

(c) the transaction creating the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

failure:

(i) to timely record the instrument of transfer; or

(ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

1.  DEFINITION OF TERMS.

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes:

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, lanes, alleys, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1 (a) (iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

2.  CONTINUATION OF INSURANCE.

(a) After Acquisition of Title.  The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title.  The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance:  The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition

h.Ab82.3

CONDITIONS AND STIPULATIONS (Continued)

of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

**CONTINUATION OF INSURANCE (continued)**

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

**3.   NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4 (a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4.   DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.**

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its right under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense or any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5.   PROOF OF LOSS OR DAMAGE.**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company and shall records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6.   OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefore.

Upon the exercise by the Company of either of the options provided for in paragraphs a (i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

SA.AL42.3

CONDITIONS AND STIPULATIONS (continued)

**7.  DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a)  The liability of the Company under this policy shall not exceed the least of:

(i)  the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations;

(ii)  the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations, or as reduced under Section 9 of these Conditions and Stipulations, at the time of loss or damage insured against by this policy occurs, together with interest thereon; or

(iii)  the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b)  In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c)  The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8.  LIMITATION OF LIABILITY.**

(a)  If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b)  In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c)  The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d)  The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a)  All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b)  Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c)  Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10.  LIABILITY NONCUMULATIVE.**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11.  PAYMENT OF LOSS.**

(a)  No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b)  When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12.  SUBROGATION UPON PAYMENT OR SETTLEMENT.**

**(a)  The Company's Right of Subrogation.**

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

**(b)  The Insured's Rights and Limitations.**

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

**(c)  The Company's Rights Against Non-insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1 (a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

CA.AL51.4

Page 4

**CONDITIONS AND STIPULATIONS (continued)**

**13.   ARBITRATION.**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association.  Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation.  All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured.  All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured.  Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties.  The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party.  Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the rules may be obtained from the Company upon request.

**14.   LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15.   SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16.   NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at P.O. Box 2029, Houston, Texas 77252-2029. If you will send a copy of the policy, it will expedite and aid the prompt handling of claims hereunder.

SCHEDULE A

Order No.:         506-19799

Policy No.:        M-2229-000825979

Date of Policy:    July 17, 2006 at 1:51 P.M.

Amount of Insurance: $10,800,000.00

Premium:           $2,160.00

Loan No.:          0114-011-010

---

1. Name of Insured:

   BANK OF SACRAMENTO, ITS SUCCESSORS AND/OR ASSIGNS, BY VALID ASSIGNMENT AS DEFINED IN PARAGRAPH 1A OF THE CONDITIONS AND STIPULATIONS

2. The estate or interest in the land which is encumbered by the insured mortgage is:

   A FEE SIMPLE

3. Title to the estate or interest in the land is vested in:

   R & B LAND INVESTMENTS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

4. The insured mortgage and assignments thereof, if any, are described as follows:

   DEED OF TRUST TO SECURE AN INDEBTEDNESS OF $10,800,000.00 , DATED JULY 12, 2006, RECORDED JULY 17, 2006, INSTRUMENT NO. 2006-00089598, OFFICIAL RECORDS.

   TRUSTOR:   R & B LAND INVESTMENTS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
   TRUSTEE:  PLACER TITLE COMPANY
   BENEFICIARY:   BANK OF SACRAMENTO
   LOAN NO.:   0114-011-010

5. The land referred to in this policy is described as follows:

   SEE EXHIBIT "A" ATTACHED FOR LEGAL DESCRIPTION

PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

ALTA . LENDERS . A

Order No. 506-19799
Policy No. M-2229-000825979

## EXHIBIT "A" LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF SOLANO, CITY OF DIXON, AND IS DESCRIBED AS FOLLOWS:

LOTS 33, 36 AND 49, AS SHOWN ON THE MAP ENTITLED: "MAP OF SUBDIVISION OF MAYES HOME PLACE, SOLANO COUNTY, CAL.", FILED IN THE OFFICE OF THE RECORDER OF SOLANO COUNTY, CALIFORNIA ON JANUARY 17, 1912 IN BOOK 4 OF MAPS, AT PAGE 7.

EXCEPTING THEREFROM ALL HYDROCARBONS AND OTHER MINERALS BELOW A DEPTH OF FIVE HUNDRED (500) FEET WITHOUT RIGHTS OF SURFACE ENTRY AS RESERVED IN THE GRANT DEED EXECUTED BY MADELINE GEORGE, ET AL, RECORDED JUNE 30, 1987 IN BOOK 1987, PAGE 90136, SOLANO COUNTY RECORDS.

APN: 0114-011-010

LEGAL.PCL.LOAN

Order No. 506-19799
Policy No. M-2229-000825979

## SCHEDULE B
## PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise by reason of:

1.    TAXES, SPECIAL AND GENERAL, ASSESSMENT DISTRICTS AND SERVICE AREAS FOR THE FISCAL YEAR 2006-2007, A LIEN, NOT YET DUE OR PAYABLE.

2.    THE LIEN OF SUPPLEMENTAL TAXES, IF ANY, ASSESSED PURSUANT TO THE PROVISIONS OF CHAPTER 3.5, (COMMENCING WITH SECTION 75) OF THE REVENUE AND TAXATION CODE, OF THE STATE OF CALIFORNIA.

3.    ASSESSMENT OF BOND PROJECT NO. 8202 (WEST "A" STREET ASSESSMENT REFUNDING) IN THE ORIGINAL PRINCIPAL AMOUNT OF $25,186.92, PAYABLE OVER A PERIOD OF 16 YEARS, COMMENCING WITH THE FISCAL YEAR 1997-1998. AMOUNT TO PAY IN FULL WILL BE FURNISHED UPON DEMAND.

      SAID BOND IS COLLECTED WITH THE ANNUAL PROPERTY TAXES SHOWN HEREIN.

4.    THE HEREIN DESCRIBED PROPERTY LIES WITHIN THE BOUNDS OF THE SOLANO IRRIGATION DISTRICT, AND IS  THEREFORE SUBJECT TO ALL THEIR TAXES AND ASSESSMENTS THEREOF. SAID TAXES ARE PAYABLE AND COLLECTED WITH THE CITY AND COUNTY TAXES.

5.    RIGHTS OF THE PUBLIC AND THE COUNTY OF SOLANO OVER THOSE PORTIONS OF SAID LAND LYING WITHIN DIXON AVENUE, AS IT NOW EXISTS.

6.    A DOCUMENT ENTITLED MEMORANDUM OF AGREEMENT, EXECUTED BY ANDREWS DIXON, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, SOLANO LAND INVESTMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, THE AZEVEDO FAMILY TRUST, TNK RYDER, LP, A CALIFORNIA LIMITED PARTNERSHIP, BERNARD H. SANDERS AND ROXIE D. SANDERS, TRUSTEES OF THE BERNARD H. SANDERS AND ROXIE D. SANDERS 1981 REVOCABLE TRUST, WILLIAM F. CLARK AND ELAINE H. CLARK, TRUSTEES OF THE WILLIAM F. AND ELAINE H. CLARK REVOCABLE TRUST, RYDER HOMES OF CALIFORNIA, INC. , A CALIFORNIA CORPORATION, WESTERN PACIFIC HOUSING, INC. A DELAWARE CORPORATION, AND BETWEEN BHI-PHI PARTNERS A CALIFORNIA GENERAL PARTNERSHIP, ON THE TERMS AND  CONDITIONS CONTAINED THEREIN, RECORDED MARCH 17, 2006, INSTRUMENT NO. 2006-00033943, OFFICIAL RECORDS.

7.    A DOCUMENT ENTITLED MASTER DEVELOPMENT AGREEMENT RELATIVE TO THE DEVELOPMENT KNOWN AS SOUTHWEST DIXON SPECIFIC PLAN, EXECUTED BY CITY OF DIXON, A MUNICIPAL CORPORATION, AND BETWEEN ANDREWS DIXON, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, SOLANO LAND INVESTMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, TNK RYDER, LP A CALIFORNIA LIMITED PARTNERSHIP, THE WILLIAM F. AND ELAINE H. CLARK REVOCABLE FAMILY TRUST, THE BERNARD H. SANDERS AND ROXIE D. SANDERS 1981 REVOCABLE TRUST AND THE AZEVEDO FAMILY TRUST (INDIVIDUALLY AND COLLECTIVELY, "APPLICANT"), ON THE TERMS AND  CONDITIONS CONTAINED THEREIN, RECORDED MARCH 08, 2006,

PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

Order No. 506-19799
Policy No. M-2229-000825979

SCHEDULE B
PART I (Continued)

INSTRUMENT NO. 2006-00028734, OFFICIAL RECORDS.

8.      THE TERMS, CONDITIONS AND PROVISIONS AS CONTAINED IN THE AGREEMENT ENTITLED
"MEMORANDUM OF AGREEMENT", BY AND BETWEEN ANDREWS DIXON, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY, SOLANO LAND INVESTMENT COMPANY, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY, THE AZEVEDO FAMILY TRUST, TNK RYDER,
LP, A CALIFORNIA LIMITED PARTNERSHIP, BERNARD H. SANDERS AND ROXIE D.
SANDERS, TRUSTEE OF THE BERNARD H. SANDERS AND ROXIE D. SANDERS 1981
REVOCABLE TRUST, WILLIAM F. CLARK AND ELAINE H. CLARK, TRUSTEES OF THE
WILLIAM F. AND ELAINE H. CLARK REVOCABLE TRUST, RYDER HOMES OF CALIFORNIA,
INC., A CALIFORNIA CORPORATION, WESTERN PACIFIC HOUSING, INC., A
CALIFORNIA AND BHI-PHI PARTNERS, A CALIFORNIA GENERAL PARTNERSHIP, DATED
DECEMBER 22, 2005, RECORDED MARCH 17, 2006, INSTRUMENT NO. 2006-00033943,
OFFICIAL RECORDS.

AFFECTS THE HEREIN DESCRIBED AND OTHER PROPERTY

PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

Order No. 506-19799
Policy No. M-2229-000825979

SCHEDULE B
PART II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon estate or interest:

THE TERMS, CONDITIONS AND PROVISIONS AS CONTAINED IN THE AGREEMENT ENTITLED "HAZARDOUS SUBSTANCES CERTIFICATE AND INDEMNITY AGREEMENT", BY AND BETWEEN R & B LAND INVESTMENTS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, AND BANK OF SACRAMENTO, DATED JULY 12, 2006, RECORDED JULY 17, 2006, INSTRUMENT NO. 2006-00089599, OFFICIAL RECORDS.

THE TERMS, CONDITIONS AND PROVISIONS AS CONTAINED IN THE AGREEMENT ENTITLED "MEMORANDUM OF OPTION AGREEMENT", BY AND BETWEEN ANDREWS DIXON, LLC, A LIMITED LIABILITY COMPANY, AND R & B LAND INVESTMENTS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, DATED JULY 11, 2006, RECORDED JULY 17, 2006, INSTRUMENT NO. 2006-00089600, OFFICIAL RECORDS.

### PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

Order No.      506-19799                         ENDORSEMENT 8.1
Policy No.     M-2229-000825979                  Fee: $25.00
Loan No.       0114-011-010

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The company insures the Insured against loss or damage sustained by reason of lack of priority of the lien of the Insured mortgage over:

(a) any environmental protection lien which, at Date of Policy is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes: None

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:   July 17, 2006 at 1:51 P.M.

CLTA Form 110.9
ALTA Endorsement Form 8.1
Environmental Protection Lien

8.1

## PLACER TITLE COMPANY
### Policy Issuing Agent for Stewart Title Guaranty Company

Order No.  506-19799
Policy No.  M-2229-000825979                    CLTA Endorsement Form 100
Loan No.  0114-011-010                          Fee            $0.00

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of:

1. The existence of any of the following:
   (a) Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired;
   (b) Present violations on the land of any enforceable covenants, conditions or restrictions;
   (c) Except as shown in Schedule B, encroachments of buildings, structures or improvements located on the land onto adjoining lands, or any encroachments onto the land of buildings, structures or improvements located on adjoining lands.

2. (a) Any future violations on the land of any covenants, conditions or restrictions occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, provided such violations result in impairment or loss of the lien of the mortgage referred to in Schedule A, or result in impairment or loss of the title to the estate or interest referred to in Schedule A if the insured shall acquire such title in satisfaction of the indebtedness secured by the insured mortgage;
   (b) Unmarketability of the title to the estate or interest referred to in Schedule A by reason of any violations on the land, occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, of any covenants, conditions or restrictions.

3. Damage to existing improvements, including lawns, shrubbery or trees:
   (a) Which are located or encroach upon that portion of the land subject to any easement shown in Schedule B, which damage results from the exercise of the right to use or maintain such easement for the purposes for which the same was granted or reserved;
   (b) Resulting from the exercise of any right to use the surface of the land for the extraction or development of the minerals excepted from the description of the land or shown as a reservation in Schedule B.

4. Any final court order or judgment requiring removal from any land adjoining the land of any encroachment shown in Schedule B.

As used in this endorsement, the words "covenants, conditions or restrictions" do not refer to or include the terms, covenants, conditions or restrictions contained in any lease.

As used in this endorsement, the words "covenants, conditions or restrictions" do not refer to or include any covenant, condition or restriction (a) relating to obligations of any type to perform maintenance, repair or remediation on the land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions or substances except to the extent that a notice of a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy and is not excepted in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:   July 17, 2006 at 1:51 P.M.

CLTA Form 100 (Rev. 06/04/04)
100

PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

Order No.      506-19799
Policy No.     M-2229-000825979                          CLTA Endorsement Form 116
Loan No.       0114-011-010                              Fee: $0.00

    The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of the failure of (i)

   A RESIDENCE

known as

   APN: 0114-011-010 , DIXON,

to be located on the land at Date of Policy, or (ii) the map attached to this policy to correctly show the location and dimensions of the land according to the public records.

    This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto.  Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated:  July 17, 2006 at 1:51 P.M.

116

N. 1/2 SEC. 22, T. 7 N., R. 1 E., M.D.B. & M.

Tax Area Code
2031
2032
2035

114-01

CITY OF DIXON

Assessor's Map Bk. 114 Pg. 01

County of Solano, Calif.

JUN 0 1 1997

Copyright © 1991, Solano County Assessor/Recorder. All rights reserved.

IMPORTANT: This plat is not a survey. It is merely furnished as a convenience to locate the land in relation to adjoining streets and other lands, and not to warrant any dimensions, distances, bearings or acreage.

Maye's Home Place Sub., R.M. Bk. 4 Pg. 7