**BOUTIN GIBSON DI GIUSTO HODELL INC.**
ROBERT D. SWANSON, SBN 162816
MICHAEL E. CHASE, SBN 214506
555 Capitol Mall, Suite 1500
Sacramento, CA 95814
Telephone (916) 321-4444
Facsimile (916) 441-7597

**LAW OFFICES OF ANDRÉ HASSID**
ANDRÉ HASSID, SBN 66145
670 Augusta Drive
Moraga, California 94556
Tel.: (925) 247-0050
Fax: (925) 871-4067

Attorneys for plaintiff BANK OF SACRAMENTO

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK OF SACRAMENTO, a California corporation,<br><br>       Plaintiff,<br><br>      vs.<br><br>STEWART TITLE GUARANTY COMPANY, a Texas corporation,<br><br>      Defendant. | Case No.: **2:09-cv-00771 JAM KJM**<br><br>**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT; DECLARATORY RELIEF; TORTIOUS BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |

Plaintiff BANK OF SACRAMENTO alleges:

## GENERAL ALLEGATIONS

1.    Plaintiff BANK OF SACRAMENTO ("the Bank") is a California banking corporation with its principal place of business in the County of Sacramento, California.

2.    On information and belief, defendant STEWART TITLE GUARANTY COMPANY ("STG") is a corporation licensed to transact insurance business in California, and

1  doing business in California.  On information and belief, STG is incorporated in Texas and has

2  an office in Houston, Texas, and a series of affiliated companies located in California.

3      3.    In exchange for a policy premium paid by the Bank to STG, STG issued to the

4  Bank in Sacramento, California a written title insurance policy, Policy No. M-2229-000825979

5  ("the Policy").  The Policy states the named insured is the Bank.  A copy of the Policy is

6  attached as Exhibit A hereto and incorporated herein by reference.  The Bank purchased the

7  Policy in connection with a deed of trust on certain real property ("the Property") that the Bank

8  would be receiving to secure a loan made to R&B Land Investments, LLC ("R&B") to purchase

9  the Property from Andrews Dixon LLC ("Andrews Dixon").  The Policy insured the Bank

10  "against loss or damage" sustained or incurred by the Bank by reason of, among other things,

11  "Any defect in or lien or encumbrance on the title," "unmarketability of the title," and "the

12  priority of any lien or encumbrance over the lien of the insured."  In the Policy, STG insured,

13  among other things, that the Bank's interest in the Parcel was junior only to excluded senior

14  interests which were listed in the Policy ("Excluded Senior Interests").

15      4.    Schedule B, Part II of the policy listed matters that STG expressly insured were

16  subordinate to the Bank's lien on the Property.  In its initial, undoctored form the Policy

17  specifically listed in Schedule B, Part II "The Terms, Conditions and Provisions as contained in

18  the Agreement entitled "Memorandum of Option Agreement", by and between Andrews Dixon,

19  LLC, a limited liability company, and R&B Land Investments, LLC, a California Limited

20  Liability Company, Dated July 11, 2006, recorded July 17, 2006, Instrument No. 2006-

21  00089600, Official Records" (hereinafter "Reference to Option").

22      5.    The Bank was named as a defendant in an action entitled *Andrews Dixon LLC v.*

23  *Bank of Sacramento et al.*, Case No. FCS030940 ("the Andrews Dixon Action").  The Andrews

24  Dixon Action was filed in Solano County.

25      6.    The Andrews Dixon Action alleged the Bank's interest in the Property was

26  subordinate to Andrews Dixon's interest in the Property based on certain provisions in an

**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

158513.1

1    agreement between Andrews Dixon and R&B which provided that R&B would convey the

2    Property to Andrews Dixon ("the Claimed Senior Interest").   On February 13, 2008, Andrews

3    Dixon filed a lis pendens against the subject property, thereby making the property un-saleable.

4    The lis pendens remained on the property until January 21, 2010.   The Claimed Senior Interest

5    was not listed as one of the matters excluded on the policy.   It was listed as one of the matters

6    specifically insured as being subordinate to the Bank's lien in Scheduled B, Part II of the Policy

7    (before STG attempted to unilaterally alter the policy).

8         7.     Commencing in January 2008, and continuing for nearly two years, instead of

9    focusing on trying to remove the encumbrance which made the property unmarketable, STG

10    focused on trying to evade its coverage responsibilities, altering documents to accomplish its

11    scheme, misrepresenting its coverage position, improperly insinuating itself into attorney client

12    privileged communications, filing a meritless declaratory relief action and trying to improperly

13    extricate itself from any responsibility under the policy.   STG failed to use reasonable diligence

14    to remove the encumbrance on the property and make the title marketable.

15         8.     Around the time that Andrews Dixon made a claim based on the Option, STG

16    inexplicably unilaterally altered the policy to remove all references to the Memorandum of

17    Option Agreement, and removed its covenant that insured that the Bank's interest was senior to

18    the Memorandum of Option Agreement.   On January 23, 2008, STG issued its unilaterally

19    altered policy without providing any prior notice to its insured, the Bank.

20         9.     By letter dated February 21, 2008, the Bank's counsel sent a letter tendering the

21    defense of the Andrews Dixon Action to STG under the Policy on behalf of the Bank and

22    requesting indemnification.

23         10.     On March 20, 2008, STG accepted in writing the tender of defense of the

24    Andrews Dixon Action and indemnification "without a reservation of rights."

25         11.     Upon accepting the Bank's tender of defense, STG decided to control the

26    defense of the case, hired counsel of its choosing, specifically the law firm of Bardellini, Straw,

**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

Cavin & Bupp, LLP ("the Bardellini Firm"), to represent the Bank in defense of the Andrews Dixon Action. In connection with the Bardellini Firm's representation of the Bank, the Bank's representatives and counsel had innumerable conversations and emails and several meetings with an attorney from the Bardellini Firm in and during which the Bank, its employees and its counsel made statements which the Bank understood would be protected by the attorney-client privilege.

12.    Subsequently, rather than focus on removing the encumbrance on the title, in April 2008 STG's claims representative left a voice mail for Bank's counsel indicating that Stewart Title Guaranty understood there was a possibility the Bank of Sacramento could be held to have "actual knowledge" of the Option Agreement, and indicated that "of course that's going to kick in all sorts of coverage issues."

13.    Bank immediately protested STG backtracking on its express written commitment to defend without a reservation of rights and further protested STG's use of improperly-obtained privileged information.

14.    On April 24, 2008, STG apologized for its improper conduct, represented it had conducted an "independent" review and re-confirmed in writing that its acceptance of defense of the Bank in the Andrews Dixon Action and indemnification was "without a reservation of rights." The Bank, based on its reliance on this representation by STG, agreed to continue to be defended by STG's panel counsel.

15.    Because the Bank's borrower was in default, the Bank foreclosed on the subject property pursuant to the terms of the insured deed of trust. On April 29, 2008, the Trustee sold the subject property at public auction. The Bank was the highest bidder and purchased the subject property in the Trustee's sale with a credit bid.

16.    In early 2008 the Bank received two preliminary offers for the property in the $10.8 million range. However, because of Andrews Dixon's claims and the lis pendens, the Property was unmarketable and the Bank was unable to proceed with the sale of the property.

4
**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

17.     In May 2008 the property was appraised as having a fair market value of $9 million.

18.     Upon information and belief, throughout 2008 and early 2009, the Bardellini Firm had numerous conversations with STG in the course of defending the Bank in the Andrews Dixon Action, prepared witnesses for depositions and represented the Bank and its employees at depositions in the Andrews Dixon Action.  STG controlled every aspect of the defense.

19.     On March 16, 2009, without any forewarning from STG, STG's coverage counsel, Michael B. Geibel, Esq., sent a letter to the Bank in which he stated, among other things:

a)     STG reserves its right to deny coverage to the Bank in the Andrews Dixon Action, including the duty to indemnify the Bank, based on the California Superior Court's Order, denying the Bank's motion to expunge the lis pendens, which Order ("the Motion to Expunge Order") had issued in August 2008;

b)     the Bank must designate new legal counsel to defend it in the Andrews Dixon Action within 30 days;

c)     STG will no longer pay for the Bardellini Firm to defend the Bank in the Andrews Dixon Action;

d)     STG strongly suggests that it will pay no more than $250 per hour for attorney's fees incurred in defense of the Bank;

e)     the Bardellini Firm will substitute out as counsel for the Bank as soon as the Bank designates new legal counsel; and

f)     STG is filing a declaratory relief action against the Bank to seek a judicial determination as to coverage, thus indicating that STG believes a controversy exists between the Bank and STG concerning whether coverage exists.

**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

158513.1

20.     Mr. Geibel's letter stated that the Bank was retracting its earlier representation that it would defend and indemnify without a reservation of rights.  It stated that STG was changing its position because, among other things, of new information, including deposition testimony of Bank employees and the ruling on the Motion to Expunge.

21.     From the time STG and its panel counsel had actual notice of the Motion to Expunge Order in August 2008, though March 16, 2009, STG continued to control the defense of Bank in the Andrews Dixon Action, continued to insinuate itself in and have complete access to attorney-client privileged communications of the Bank and its panel counsel attorneys, the Bardellini Firm.  On information and belief, during this time period, without putting the Bank on notice, STG began to surreptitiously explore and plot retraction of its waiver of all policy defenses (i.e. defense without a reservation of rights) and to review attorney-client privileged communications between the Bank and the Bardellini firm, while contemporaneously having full access to confidential attorney-client privileged communications of the Bank through STG's panel counsel.  In doing so STG was focused on evading its coverage obligations and failed to use reasonable diligence to cure the unmarketability of title.

22.     On information and belief, STG knew the Bank would rely on the representation that it was defending without a reservation of rights in order to allow itself to be represented by a law firm not of its own choosing, and that but for such representation, the Bank would have chosen its own independent counsel to represent it in the Andrews Dixon Action (i.e., *Cumis* counsel).

23.     During the time STG controlled the defense it did virtually nothing to try to resolve the Andrews Dixon Action in order to make the subject property marketable.  STG and its panel counsel made no meaningful investigation, initiated no meaningful discovery and took no action to attempt to mediate, settle or otherwise resolve the case.  STG failed to conduct even the most rudimentary investigation.  For instance, throughout 2008 and 2009 STG failed to

**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

158513.1

1   obtain a professional appraisal of the property in order to assess the amount of the Bank's loss

2   and damages, or assess the settlement value of the Andrews Dixon Action.

3           24.     On July 22, 2009, Plaintiff's counsel requested that STG attend a mediation with

4   full authority to settle.  Having received no response from STG, on August 21, 2009, Plaintiff's

5   counsel made a second request for STG to attend mediation with full authority to settle.  Finally

6   on October 7, 2009, nearly three months after the initial request, STG communicated it would

7   participate in the mediation of the Andrews Dixon Action.  These delays were typical of STG's

8   lack of reasonable diligence in acting to remove the unmarketability of title.

9           25.     STG continued its lack of diligence by appearing at the mediation on October 27,

10  2009 with inadequate settlement authority, thereby further delaying resolution of the Andrews

11  Dixon action.

12          26.     In a letter by STG's counsel dated November 30, 2009, STG admitted it was

13  unable to fully address the settlement proposal on the table because it had not obtained an

14  appraisal of the subject property, even though it had been nearly two years since STG first

15  learned of the Andrews Dixon dispute.  STG further indicated that the "Bank's present legal

16  defenses" to the Andrews Dixon Action were "flawed and incomplete" – even though STG had

17  fully controlled the defense for more than a year.  STG indicated it believed the Bank had

18  "substantial legal and factual defenses to all claims" and in addition "the Bank holds significant

19  potential counterclaims against Andrews Dixon" and it believed the Bank "could recover its

20  principal from Andrews Dixon," as well as recover "against Andrews Dixon for fraud in the

21  inducement."  In its letter STG further delayed resolution of the Andrews Dixon Action by

22  rejecting the proposed settlement because it believed "these defense and claims do not simply

23  diminish exposure, but may eliminate it."

24          27.     In the second mediation held December 3, 2009, a settlement was tentatively

25  reached to resolve the Andrews Dixon Action partly with payment by STG and mutual release

26  between Andrews Dixon and the Bank.  The settlement was consummated and resulted in a

1   dismissal of the Andrews Dixon Action and removal of the Lis Pendens on January 21, 2010.

2   Thus because of STG's failure to investigate and clear title with reasonable diligence it took

3   three and one-half (3½) years from the date the policy was issued until Andrews Dixon's

4   claimed superior interest was resolved.

5       28.     Knowing it had caused substantial damage to the Bank by unreasonably filing a

6   Declaratory Relief action without reasonable ground, STG dismissed its Declaratory Relief

7   action in December 2009 and reimbursed the Bank some of its "Brandt damages" (attorneys

8   fees incurred by the Bank in defending the Declaratory Relief action and in prosecuting this

9   action against STG).

10      29.     On November 25, 2009, Scott Beebe, MAI, FRICS, a Certified General Real

11  Estate Appraiser (CA Certificate # AG015266) appraised the value of the property as of that

12  date to be just $4.3 million.

13      30.     On February 16, 2010 the Bank demanded STG reimburse it for its loss and

14  damage covered under the policy.  The Bank demanded STG pay it $8.7 million.

15      31.     By letter dated February 27, 2010 STG denied the Bank's claim of loss and

16  damage and refused to pay the Bank any sum under the policy.  STG based its denial on

17  condition/exclusions contained in Paragraphs 4 (b), 6 (b), 8 (a)  and 8 (b) of the policy and its

18  assertion that it had settled the underlying litigation at its "sole expense."  In doing so STG

19  ignored the fact it had not met the requirements of the provisions of the Policy it had cited

20  because it had not acted with reasonable diligence to clear the unmarketability of title and had

21  not settled the underlying litigation at its "sole expense."

22                          **FIRST CAUSE OF ACTION**

23                             **(Breach of Contract)**

24      32.     The Bank repeats and realleges the allegations in paragraphs 1 though 31 above

25  as if fully set forth herein.

26

**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

158513.1

1     33.    As a result of the unmarketability of the title from the date of foreclosure until

2  January 21, 2010, when the lis pendens was removed, the Bank suffered substantial loss and

3  damages covered by the Policy.  During this period of time the Bank suffered diminution in

4  value of the subject property in an amount in excess of $6.5 million and the inability to sell the

5  property for $10.8 million in 2008 after it was approached with a bona fide offer.  The Bank

6  further suffered carrying costs in excess of $300,000 for property taxes it paid, appraisal fees,

7  unreimbursed legal costs, overhead costs, and other damages.  In addition the Bank suffered lost

8  interest and other damages in excess of $1.9 million.  This loss and these damages are covered

9  by the policy.  Further, these damages would not have occurred, or would have been lessened, if

10  STG had used reasonable diligence to prosecute and bring the Andrews Dixon Action to an end

11  and lift the lis pendens, instead of focusing on trying to evade coverage, improperly attempting

12  to alter the terms of the policy, misrepresenting its coverage position and strategy, improperly

13  insinuating itself into attorney client-privileged communications, failing to meaningfully defend

14  the Bank with a sense of urgency, delaying its consent to participate in a mediation, failing to

15  conduct a prompt investigation, failing to obtain timely appraisals of the property, and filing an

16  unmeritorious declaratory relief without any reasonable ground in order to oppress the Bank

17  and avoid STG's coverage obligations.

18     34.    The Bank has performed all of its obligations under the Policy, except to the

19  extent waived by STG or excused.  On information and belief, STG has breached its obligations

20  to the Bank under the Policy in a variety of respects, including but not limited to the following:

21          a)    Knowingly defending the Bank with conflicted counsel in the Andrews

22          Dixon Action;

23          b)    Failing to adequately investigate the claims against the Bank;

24          c)    Failing to properly handle the claim against the Bank with reasonable

25          diligence;

26          d)    Misrepresenting that it would defend without a reservation of rights;

**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

158513.1

e)      Providing an inadequate defense while attempting to drive the Andrews Dixon Action into an exclusion in the policy;

f)      Fraudulently altering the policy to try to erase express coverage for the Bank's priority over the subject Memorandum of Option;

g)      Misrepresenting the terms of the policy;

h)      Misrepresenting information provided to STG prior to and at the time of issuance of the policy;

i)      Gaining access to attorney-client privileged communications on the false pretense that it was defending without a reservation of rights, and further inappropriately and in bad faith misusing information gained through this improper access in order to attempt to subvert the Bank's right to coverage under the policy;

j)      Continuing to use panel counsel and inappropriately accessing attorney-client privileged communications, even after it began scheming to assert coverage defenses it knew it had already waived;

k)      Filing an unmeritorious declaratory relief action to oppress the bank, cause it to fight a two front legal battle and incur additional cost and expense;

l)      Delaying resolution of the Andrews Dixon Action in order to try to take advantage of a plunging real estate market in order to try to limit its exposure under the policy to the detriment of its insured; and

k)      Failing to use reasonable diligence to remove the lis pendens and remove the claims that made the title unmarketable, refusing to pay the Bank's loss and damages covered by the Policy, or even to offer any sum for such loss and damage.

35.    The Bank performed all conditions, covenants, and agreements required of it under the Policy.

**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

158513.1

36.     As a direct and proximate result of STG's breach of the Policy, the Bank has suffered and will continue to suffer monetary damages in an amount subject to proof.

**SECOND CAUSE OF ACTION**

**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

37.     The Bank repeats and realleges the allegations in paragraphs 1 though 36 above as if fully set forth herein.

38.     STG's conduct described above, including, but not limited to refusal to pay the Bank policy benefits due under the Policy; refusal to reimburse the Bank for its loss and damage covered by the Policy; failing to use reasonable diligence to perfect the title of the subject property; causing additional damage by failing to use reasonable diligence in handling the investigation, defense and resolution of the Andrews Dixon Action; making misrepresentations; infringing on attorney-client privileged communications by misrepresenting that it had waived its policy defenses and agreed to defend without a reservation of rights; scheming to negate coverage and withdraw from the defense while continuing to access attorney-client privileged communications through the use of panel counsel; not disclosing to the Bank that STG was intending to negate coverage while at the same time knowing that Bank was continuing to disclose attorney-client privileged communications to STGs' panel counsel on the representation that STG was continuing to defend without a reservation of rights; reserving rights after more than a year of litigation in which it completely controlled the defense of the Andrews Dixon Action and providing a flawed and incomplete defense while trying to drive the case out of coverage; failure to conduct a reasonable investigation or any investigation at all; filing an unmeritorious declaratory relief action against the Bank without any reasonable grounds when STG had expressly, knowingly and in writing agreed to defend and indemnify the Bank without a reservation of rights on two occasions; misrepresenting certain facts in the Declaratory Relief action in order to try to accomplish its scheme of abandoning its insured; improperly trying to alter the terms of the policy by unilaterally issuing an amended policy

11
**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

1   without providing any prior notice or explanation to the Bank and other conduct described

2   above is a violation of the implied covenant of good faith and fair dealing and constitutes the

3   utmost bad faith by STG.

4       40.   STG understood that in the current economic climate regional community Banks

5   face harsh economic challenges not seen since the 1930s.  STG knew its delays and failure to

6   use reasonable diligence in perfecting title to the subject property would subject the Bank to

7   additional damages, scrutiny by regulatory departments and cause the Bank to lose income and

8   interest.

9       41.   Implied in the Policy is a covenant of good faith and fair dealing pursuant to

10   which, among other things STG is required to give the interests of the Bank equal consideration

11   with its own interests, and to deal fairly, in good faith and openly with the Bank.  In doing the

12   conduct described above STG breached the duty of good faith and fair dealing.

13       42.   On information and belief STG breached the implied covenant of good faith and

14   fair dealing arising from the Policy and is liable to the Bank for all detriment and damages

15   proximately caused by such breach, which detriment and damages is an amount equal at least to

16   all attorney's fees and costs incurred by the Bank in the Andrews Dixon Action which have not

17   been reimbursed, consequential damages, attorney fees under *Brandt v. Superior Court* (1985)

18   37 Cal.3d 813, and other monetary damages, all in an amount to be proven at trial.

19       43.   On information and belief the aforesaid breaches of the implied covenant of

20   good faith and fair dealing, and the insidious strategy of STG to delay resolution of the

21   Andrews Dixon Action in order to take advantage of a plunging real estate market at the

22   expense of causing loss and damage to the Bank, were intentional, done with conscious

23   disregard for the rights of the Bank, and were willful, malicious, oppressive, despicable,

24   nefarious, deceitful and designed to injure the Bank, and each of them, and deny them benefits

25   due to them under the Policy.  STG's nefarious, deceitful and fraudulent unilateral alteration of

26   the policy is unconscionable and is the type of conduct that no insurance company should be

158513.1

permitted to undertake.   STG authorized and ratified the wrongful conduct of its employees and was itself guilty of oppression, fraud and malice.  Accordingly, the Bank is entitled to punitive and exemplary damages in an amount sufficient to punish STG for its wrongdoing, and to deter similar conduct in the future.

### PRAYER

WHEREFORE, the Bank prays relief against STG as follows:

A.   For damages against STG according to proof for breach of contract including loss and damages covered under the policy, carrying costs, unreimbursed costs of defense incurred by the Bank in their defense of the Andrews Dixon Action;

B.   Compensatory damages for damage for Bank's loss of use of money, loss of income, and lost opportunity damages;

C.   For attorneys fees incurred in bringing this action pursuant to California Insurance Code § 1619 and *Brandt v. Superior Court* (1985) 37 Cal.3d 813;

D.   For prejudgment interest in an amount to be proved at time of trial;

E.   Punitive damages in an amount sufficient to deter and make an example of STG;

F.   Costs of suit herein; and

G.   For such other relief as the court may deem just and proper.

Dated: March 15, 2010.                    BOUTIN GIBSON DI GIUSTO HODELL INC.


By: /s/ Robert D. Swanson
    Robert D. Swanson
    Michael E. Chase
    Attorneys for Bank of Sacramento

**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH**

158513.1

"EXHIBIT A"

POLICY OF TITLE INSURANCE ISSUED BY



SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, STEWART TITLE GUARANTY COMPANY, a Texas corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from any improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens;
9. Any assessments for street improvements under construction or completed at Date of Policy not excepted in Schedule B which now have gained or hereafter may gain priority over the lien of the insured mortgage.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

In witness whereof, Stewart Title Guaranty Company has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.

_Chairman of the Board_

**stewart**
title guaranty company

_President_

_Authorized Countersignature_
PLACER TITLE COMPANY
Agent ID: 050200

STEWART TITLE GUARANTY CO.
INCORPORATED
1908
TEXAS

ALTA LOAN POLICY (10-17-92)
With ALTA Endorsement - Form 1 Coverage
STG.CA.AL92

| Policy Serial No. | M-2229-000825979 |
|---|---|

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

(a) created, suffered, assumed or agreed to by the insured claimant;

(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

(c) resulting in no loss or damage to the insured claimant;

(d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or

(e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

(a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

(b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

(c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

(i) to timely record the instrument of transfer; or

(ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

**CONDITIONS AND STIPULATIONS**

1. DEFINITION OF TERMS.

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes:

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, lanes, alleys, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1 (a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

2. CONTINUATION OF INSURANCE.

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition

k.A6.b2.j

CONDITIONS AND STIPULATIONS (Continued)

of the estate or interest as insured, and only that part of any loss which reduces the value of the insured estate or interest taken or the amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

CONTINUATION OF INSURANCE (continued)

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

3.   NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4 (a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

4.   DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense or any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (I) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

5.   PROOF OF LOSS OR DAMAGE.

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

6.   OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS: TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefore.

Upon the exercise by the Company of either of the options provided for in paragraphs a (i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

D. AL42..3

Page 3

CONDITIONS AND STIPULATIONS (continued)

7.  DETERMINATION AND EXTENT OF LIABILITY.
This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
(a)  The liability of the Company under this policy shall not exceed the least of:
(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations;
(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations, or as reduced under Section 9 of these Conditions and Stipulations, at the time of loss or damage insured against by this policy occurs, together with interest thereon; or
(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.
(b)  In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.
(c)  The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.
8.  LIMITATION OF LIABILITY.
(a)  If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
(b)  In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.
(c)  The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.
(d)  The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.
9.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.
(a)  All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.
(b)  Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.
(c)  Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.
10.  LIABILITY NONCUMULATIVE.
If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.
11.  PAYMENT OF LOSS.
(a)  No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.
(b)  When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.
12.  SUBROGATION UPON PAYMENT OR SETTLEMENT.
(a)  The Company's Right of Subrogation.
Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.
The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.
If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.
(b)  The Insured's Rights and Limitations.
Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.
When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of the title or interest adverse to the title to the estate or
or
interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.
(c)  The Company's Rights Against Non-insured Obligors.
The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.
The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1 (a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

CA-JAL95-4

CONDITIONS AND STIPULATIONS (continued)

13. **ARBITRATION**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the rules may be obtained from the Company upon request.

14. **LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

15. **SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

16. **NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at P.O. Box 2029, Houston, Texas 77252-2029. If you will send a copy of the policy, it will expedite and aid the prompt handling of claims hereunder.

## SCHEDULE A

Order No.:              506-19799

Policy No.:             M-2229-000825979

Date of Policy:         July 17, 2006 at 1:51 P.M.

Amount of Insurance:    $10,800,000.00

Premium:                $2,160.00

Loan No.:               0114-011-010

1. Name of Insured:
   BANK OF SACRAMENTO, ITS SUCCESSORS AND/OR ASSIGNS, BY VALID ASSIGNMENT AS
   DEFINED IN PARAGRAPH 1A OF THE CONDITIONS AND STIPULATIONS

2. The estate or interest in the land which is encumbered by the insured mortgage is:

   A FEE SIMPLE

3. Title to the estate or interest in the land is vested in:

   R & B LAND INVESTMENTS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

4. The insured mortgage and assignments thereof, if any, are described as follows:

   DEED OF TRUST TO SECURE AN INDEBTEDNESS OF $10,800,000.00 , DATED JULY 12,
   2006, RECORDED JULY 17, 2006, INSTRUMENT NO. 2006-00089598, OFFICIAL
   RECORDS.

   TRUSTOR:   R & B LAND INVESTMENTS, LLC, A CALIFORNIA LIMITED LIABILITY
   COMPANY
   TRUSTEE:   PLACER TITLE COMPANY
   BENEFICIARY:   BANK OF SACRAMENTO
   LOAN NO.:   0114-011-010

5. The land referred to in this policy is described as follows:

   SEE EXHIBIT "A" ATTACHED FOR LEGAL DESCRIPTION

PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

ALTA. LENDERS ; A

Order No. 506-19799
Policy No. M-2229-000825979

## EXHIBIT "A" LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF SOLANO, CITY OF DIXON, AND IS DESCRIBED AS FOLLOWS:

LOTS 33, 36 AND 49, AS SHOWN ON THE MAP ENTITLED: "MAP OF SUBDIVISION OF MAYES HOME PLACE, SOLANO COUNTY, CAL.", FILED IN THE OFFICE OF THE RECORDER OF SOLANO COUNTY, CALIFORNIA ON JANUARY 17, 1912 IN BOOK 4 OF MAPS, AT PAGE 7.

EXCEPTING THEREFROM ALL HYDROCARBONS AND OTHER MINERALS BELOW A DEPTH OF FIVE HUNDRED (500) FEET WITHOUT RIGHTS OF SURFACE ENTRY AS RESERVED IN THE GRANT DEED EXECUTED BY MADELINE GEORGE, ET AL, RECORDED JUNE 30, 1987 IN BOOK 1987, PAGE 90136, SOLANO COUNTY RECORDS.

APN: 0114-011-010

CCAL.FOL.LOAN

Order No. 506-19799
Policy No. M-2229-000825979

SCHEDULE B
PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise by reason of:

1.  TAXES, SPECIAL AND GENERAL, ASSESSMENT DISTRICTS AND SERVICE AREAS FOR THE FISCAL YEAR 2006-2007, A LIEN, NOT YET DUE OR PAYABLE.

2.  THE LIEN OF SUPPLEMENTAL TAXES, IF ANY, ASSESSED PURSUANT TO THE PROVISIONS OF CHAPTER 3.5, (COMMENCING WITH SECTION 75) OF THE REVENUE AND TAXATION CODE, OF THE STATE OF CALIFORNIA.

3.  ASSESSMENT OF BOND PROJECT NO. 8202 (WEST "A" STREET ASSESSMENT REFUNDING) IN THE ORIGINAL PRINCIPAL AMOUNT OF $25,186.92, PAYABLE OVER A PERIOD OF 16 YEARS, COMMENCING WITH THE FISCAL YEAR 1997-1998. AMOUNT TO PAY IN FULL WILL BE FURNISHED UPON DEMAND.

    SAID BOND IS COLLECTED WITH THE ANNUAL PROPERTY TAXES SHOWN HEREIN.

4.  THE HEREIN DESCRIBED PROPERTY LIES WITHIN THE BOUNDS OF THE SOLANO IRRIGATION DISTRICT, AND IS THEREFORE SUBJECT TO ALL THEIR TAXES AND ASSESSMENTS THEREOF. SAID TAXES ARE PAYABLE AND COLLECTED WITH THE CITY AND COUNTY TAXES.

5.  RIGHTS OF THE PUBLIC AND THE COUNTY OF SOLANO OVER THOSE PORTIONS OF SAID LAND LYING WITHIN DIXON AVENUE, AS IT NOW EXISTS.

6.  A DOCUMENT ENTITLED MEMORANDUM OF AGREEMENT, EXECUTED BY ANDREWS DIXON, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, SOLANO LAND INVESTMENT COMPANY; LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, THE AZEVEDO FAMILY TRUST, TNK RYDER, LP, A CALIFORNIA LIMITED PARTNERSHIP, BERNARD H. SANDERS AND ROXIE D. SANDERS, TRUSTEES OF THE BERNARD H. SANDERS AND ROXIE D. SANDERS 1981 REVOCABLE TRUST, WILLIAM F. CLARK AND ELAINE H. CLARK, TRUSTEES OF THE WILLIAM F. AND ELAINE H. CLARK REVOCABLE TRUST, RYDER HOMES OF CALIFORNIA, INC. , A CALIFORNIA CORPORATION, WESTERN PACIFIC HOUSING, INC. A DELAWARE CORPORATION, AND BETWEEN BHI-PHI PARTNERS A CALIFORNIA GENERAL PARTNERSHIP, ON THE TERMS AND CONDITIONS CONTAINED THEREIN, RECORDED MARCH 17, 2006, INSTRUMENT NO. 2006-00033943, OFFICIAL RECORDS.

7.  A DOCUMENT ENTITLED MASTER DEVELOPMENT AGREEMENT RELATIVE TO THE DEVELOPMENT KNOWN AS SOUTHWEST DIXON SPECIFIC PLAN, EXECUTED BY CITY OF DIXON, A MUNICIPAL CORPORATION, AND BETWEEN ANDREWS DIXON, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, SOLANO LAND INVESTMENT COMPANY, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, TNK RYDER, LP A CALIFORNIA LIMITED PARTNERSHIP, THE WILLIAM F. AND ELAINE H. CLARK REVOCABLE FAMILY TRUST, THE BERNARD H. SANDERS AND ROXIE D. SANDERS 1981 REVOCABLE TRUST AND THE AZEVEDO FAMILY TRUST (INDIVIDUALLY AND COLLECTIVELY, "APPLICANT"), ON THE TERMS AND CONDITIONS CONTAINED THEREIN, RECORDED MARCH 08, 2006.

PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

ALTA,LENDERS,91

Order No. 506-19799
Policy No. M-2229-000825979

SCHEDULE B
PART I (Continued)

INSTRUMENT NO. 2006-00028734, OFFICIAL RECORDS.

8.   THE TERMS, CONDITIONS AND PROVISIONS AS CONTAINED IN THE AGREEMENT ENTITLED
"MEMORANDUM OF AGREEMENT", BY AND BETWEEN ANDREWS DIXON, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY, SOLANO LAND INVESTMENT COMPANY, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY, THE AZEVEDO FAMILY TRUST, TNK RYDER,
LP, A CALIFORNIA LIMITED PARTNERSHIP, BERNARD H. SANDERS AND ROXIE D.
SANDERS, TRUSTEE OF THE BERNARD H. SANDERS AND ROXIE D. SANDERS 1981
REVOCABLE TRUST, WILLIAM F. CLARK AND ELAINE H. CLARK, TRUSTEES OF THE
WILLIAM F. AND ELAINE H. CLARK REVOCABLE TRUST, RYDER HOMES OF CALIFORNIA,
INC., A CALIFORNIA CORPORATION, WESTERN PACIFIC HOUSING, INC., A
CALIFORNIA AND BHI-PHI PARTNERS, A CALIFORNIA GENERAL PARTNERSHIP, DATED
DECEMBER 22, 2005, RECORDED MARCH 17, 2006, INSTRUMENT NO. 2006-00033943,
OFFICIAL RECORDS.

AFFECTS THE HEREIN DESCRIBED AND OTHER PROPERTY

Order No. 506-19799
Policy No. M-2229-000825979

SCHEDULE B
PART II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon estate or interest:

THE TERMS, CONDITIONS AND PROVISIONS AS CONTAINED IN THE AGREEMENT ENTITLED "HAZARDOUS SUBSTANCES CERTIFICATE AND INDEMNITY AGREEMENT", BY AND BETWEEN R & B LAND INVESTMENTS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, AND BANK OF SACRAMENTO, DATED JULY 12, 2006, RECORDED JULY 17, 2006, INSTRUMENT NO. 2006-00089599, OFFICIAL RECORDS.

THE TERMS, CONDITIONS AND PROVISIONS AS CONTAINED IN THE AGREEMENT ENTITLED "MEMORANDUM OF OPTION AGREEMENT", BY AND BETWEEN ANDREWS DIXON, LLC, A LIMITED LIABILITY COMPANY, AND R & B LAND INVESTMENTS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, DATED JULY 11, 2006, RECORDED JULY 17, 2006, INSTRUMENT NO. 2006-00089600, OFFICIAL RECORDS.

PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

Order No.    506-19799
Policy No.   M-2229-000825979
Loan No.     0114-011-010

ENDORSEMENT 8.1
Fee: $25.00

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The company insures the Insured against loss or damage sustained by reason of lack of priority of the lien of the Insured mortgage over:

(a) any environmental protection lien which, at Date of Policy is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes: None

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:   July 17, 2006 at 1:51 P.M.

CLTA Form 110.9
ALTA Endorsement Form 8.1
Environmental Protection Lien

PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

Order No.      506-19799
Policy No.     M-2229-000825979                      CLTA Endorsement Form 100
Loan No.       0114-011-010                          Fee              $0.00

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of:

1.  The existence of any of the following:
    (a)  Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired;
    (b)  Present violations on the land of any enforceable covenants, conditions or restrictions;
    (c)  Except as shown in Schedule B, encroachments of buildings, structures or improvements located on the land onto adjoining lands, or any encroachments onto the land of buildings, structures or improvements located on adjoining lands.

2.  (a)  Any future violations on the land of any covenants, conditions or restrictions occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, provided such violations result in impairment or loss of the lien of the mortgage referred to in Schedule A, or result in impairment or loss of the title to the estate or interest referred to in Schedule A if the insured shall acquire such title in satisfaction of the indebtedness secured by the insured mortgage;
    (b)  Unmarketability of the title to the estate or interest referred to in Schedule A by reason of any violations on the land, occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, of any covenants, conditions or restrictions.

3.  Damage to existing improvements, including lawns, shrubbery or trees:
    (a)  Which are located or encroach upon that portion of the land subject to any easement shown in Schedule B, which damage results from the exercise of the right to use or maintain such easement for the purposes for which the same was granted or reserved;
    (b)  Resulting from the exercise of any right to use the surface of the land for the extraction or development of the minerals excepted from the description of the land or shown as a reservation in Schedule B.

4.  Any final court order or judgment requiring removal from any land adjoining the land of any encroachment shown in Schedule B.

As used in this endorsement, the words "covenants, conditions or restrictions" do not refer to or include the terms, covenants, conditions or restrictions contained in any lease.

As used in this endorsement, the words "covenants, conditions or restrictions" do not refer to or include any covenant, condition or restriction (a) relating to obligations of any type to perform maintenance, repair or remediation on the land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions or substances except to the extent that a notice of a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy and is not excepted in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:   July 17, 2006 at 1:51 P.M.

CLTA Form 100 (Rev. 06/04/04)
100

PLACER TITLE COMPANY
Policy Issuing Agent for Stewart Title Guaranty Company

Order No.    506-19799
Policy No.   M-2229-000825979
Loan No.     0114-011-010

CLTA Endorsement Form 116
Fee: $0.00

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of the failure of (i)

A RESIDENCE

known as

APN: 0114-011-010 , DIXON,

to be located on the land at Date of Policy, or (ii) the map attached to this policy to correctly show the location and dimensions of the land according to the public records.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

Dated: July 27, 2006 at 1:51 P.M.

NOTE: This plat is not a survey, nor is it furnished as a convenience to locate the land in relation to adjoining streets and other lands, and not to s and other lands, and not to lots or acreage, and not to ns of acreage, distances, ths of acreage.

Aloye's Home Place Sub., R.M. Bk. 4 Pg. 7

CITY OF DIXON

Assessor's Map Bk. 114 Pg. 01
County of Solano, Calif.

N. ½ SEC. 22, T. 7 N., R. 1 E., M.D.B. & M.

Tax Area Codes
2031
2032
2035

114-01