Samuel R. Miller (SBN 066871)
Nicole M. Ryan (SBN 175980)
Cecilia Y. Chan (SBN 240971)
srmiller@sidley.com
nicole.ryan@sidley.com
cecilia.chan@sidley.com
SIDLEY AUSTIN LLP
555 California Street
San Francisco, California  94104
Telephone:     (415) 772-1200
Facsimile:     (415) 772-7400

Attorneys for Defendant
STEWART TITLE GUARANTY COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| BANK OF SACRAMENTO,<br>a California Corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>STEWART TITLE GUARANTY COMPANY,<br>a Texas Corporation,<br><br>          Defendant. | No. 2:09-cv-00771 JAM KJM<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        June 16, 2010<br>Time:        9:30 a.m.<br>Location:    Courtroom 6<br>Trial Date:  None Set<br><br>The Honorable John A. Mendez |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on June 16, 2010, at 9:30 a.m., in the United States District Court for the Eastern District of California, located at 501 I Street, Sacramento, California, before the Honorable John A. Mendez in Courtroom 6, 14th Floor, Defendant Stewart Title Guaranty Company ("Stewart Title Guaranty" or "Defendant") will and hereby does move the Court for an order dismissing the "Second Amended Complaint for Breach of Contract; Declaratory Relief [sic]; Tortious Breach of Implied Covenant of Good Faith and Fair Dealing" (the "Second Amended Complaint" or "SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice and exhibits attached thereto, all pleadings and papers on file in this action, and such additional evidence and authority as may be offered at or before the time of oral argument on this Motion.

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................1

II.  STATEMENT OF FACTS ......................................................................3

    A.  The Title Insurance Policy .........................................................3

    B.  The Andrews Dixon Action ........................................................5

    C.  The *Lis Pendens* and the Filing by the Bank's Own Counsel
        of a Motion to Expunge the *Lis Pendens* ..................................5

    D.  The Bank's Tender of Defense to Stewart Title Guaranty .........6

    E.  The Court's Finding on the Motion to Expunge ........................6

    F.  The March 16, 2009 Reservation of Rights Letter .....................7

    G.  The Filing of This Action ...........................................................7

    H.  Resolution of the Andrews Dixon Action .................................8

    I.  The Bank's Further Demand .......................................................8

III.  ARGUMENT .........................................................................................9

    A.  Legal Standard ...........................................................................9

    B.  The SAC Does Not State a Claim for Breach of Contract
        or Breach of Covenant of Good Faith and Fair Dealing
        in Connection with the Defense or Indemnification of
        the Andrews Dixon Action. .......................................................9

        1.  The SAC Fails to Plead a Breach of Contract Claim. ...............10

            a.  The Breach of Contract Claim Must Be Dismissed
                for Failure to Allege that Benefits Were Withheld. ......10

            b.  The SAC Fails to Plead that the Bank Suffered Any
                Damages. ......................................................................11

        2.  The SAC Fails to Plead a Claim for Breach of
            the Implied Covenant of Good Faith and Fair Dealing ............12

    C.  The *Lis Pendens* Does Not Fall Within Policy Coverage. .....12

    D.  The SAC Does Not State a Claim Against Stewart Title Guaranty
        for Loss Under the Policy, Because the Alleged Encumbrance Was
        Resolved by Litigation Favorably to the Bank. .......................13

    E.  The SAC Does Not State a Claim Against Stewart Title Guaranty,
        Because It Does Not Allege a Loss Resulting from an
        Insured-Against Encumbrance or Title Defect. .......................18

i

1

IV.    CONCLUSION.................................................................................................21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ................................................................................9

*Braun v. Allstate Ins. Co.,*
    No. 2:08-cv-00283, 2008 WL 3155275 (E.D. Cal. Aug. 5, 2008) ................................9, 10, 20

*Buss v. Superior Court,*
    16 Cal. 4th 35 (1997)................................................................................ 10-11

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
    222 Cal. App. 3d 1371 (1990) ................................................................................10

*Continental Ins. Co. v. Superior Court,*
    37 Cal. App. 4th 69 (1995) ................................................................11, 12, 17, 18

*Doyle v. Safeco Ins. Co. of Am.,*
    No. 1:08-cv-01587, 2008 WL 5070055 (E.D. Cal. Nov. 26, 2008) ............................9, 12, 20

*Emerald Bay Comty Ass'n v. Golden Eagle Ins. Corp.,*
    130 Cal. App. 4th 1078 (2005) ................................................................................12

*First Federal Savings Bank of Brunswick v. Stewart Title Guaranty Co.,*
    451 S.E.2d 916, 920-21 (S.C. Ct. App. 1995) ................................................................16

*Hergenroeder v. Travelers Prop. Cas. Ins. Co.,*
    249 F.R.D. 595 (E.D. Cal. Apr. 21, 2008) ................................................................10

*Hood v. Harford Life & Accident Ins. Co.,*
    No. 2:07-cv-01634, 2009 WL 453115 (E.D. Cal. Feb. 23, 2009) ........................................11

*In re Stac Elecs. Sec. Litig.,*
    89 F.3d 1399 (9th Cir. 1996) ................................................................................9

*Karl v. Commonwealth Land Title Ins. Co.,*
    20 Cal. App. 4th 972 (1993) ................................................................................15, 19

*Lawyers Title Ins. Co. v. Synergism One Corp.,*
    572 So. 2d 517 (Fla. Dist. Ct. App. 1990) ................................................................15, 16

*Leaf v. Phil Rauch, Inc.,*
    47 Cal. App. 3d 371 (1975) ................................................................................20

*Lick Mill Creek Apartments v. Chi. Title Ins. Co.,*
    231 Cal. App. 3d 1654 (1991) ................................................................................20

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

*Love v. Fire Ins. Exch.*,
   221 Cal. App. 3d 1136 (1990) ........................................................................10, 12

*Merritt v. Reserve Ins. Co.*,
   34 Cal. App. 3d 858 (1973) ....................................................................................18

*Native Sun Inv. Group v. Ticor Title Ins. Co.*,
   189 Cal. App. 3d 1265 (1987) ...............................................................................20

*Nebo, Inc. v. Transamerica Title Co.*,
   21 Cal. App. 3d 222 (1971) ....................................................................................17

*Progressive W. Ins. Co. v. Dallo*,
   No. 07CV1003, 2008 WL 413752 (S.D. Cal. Feb. 14, 2008).................................12

*Rosen v. Nations Title Ins. Co.*,
   56 Cal. App. 4th 1489 (1997) ................................................................................13

*RTC Mortgage Trust 1994 N-1 v. Fidelity National Title Ins. Co.*,
   58 F. Supp. 2d 503, 533 (D. N.J. 1999) ...........................................................16, 20

*Safeco Ins. Co. of Am. v. J & D Painting*,
   17 Cal. App. 4th 1199 (1993) ................................................................................19

*Safeco Title Ins. Co. v. Moskopoulos*,
   116 Cal. App. 3d 658, 663 (1981) .........................................................................13

*Sherman v. Paul Revere Life Ins. Co.*,
   No. CV 03-5730, 2004 WL 4946213 (C.D. Cal. Feb. 17, 2004).................10, 11, 12

**STATUTES**

Cal. Civ. Code § 3287(a) .............................................................................................20

Cal. Civ. Code § 3289(b) .............................................................................................20

Fed. R. Civ. P. 12(b)(6)..................................................................................................9

**OTHER AUTHORITIES**

Alice L. Akawi, et al.,
   *California Title Insurance Practice* § 6.44 (CEB 2d ed. 2009 update) ..................13

H. Walter Croskey, et al., *California Practice Guide:*
   *Insurance Litigation* § 7:639 (Rutter Group 2009)...............................................18

3 Harry D. Miller, Miller & Starr,
   *California Real Estate, Title Insurance* § 7:231 (3d ed. 2000)..............................19

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

Wendy J. Watanabe, 448 PLI/Real Property 677, *The Title Insurer's Obligation to Pay Indemnity: When Does the Insured's Right to Damages Accrue?* (1999) ..............................19

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3

     Plaintiff, Bank of Sacramento (the "Bank"), originally claimed that Stewart Title

4

Guaranty Company ("Stewart Title Guaranty") failed to defend the Bank in an underlying third

5

party action (the "Andrews Dixon Action").[1]  Then, in an amended complaint, the Bank changed

6

its theory and alleged that Stewart Title Guaranty failed to provide it with an unconflicted

7

defense in the Andrews Dixon Action.  Thereafter, at the Bank's request, this action was stayed

8

pending resolution of the Andrews Dixon Action.

9

     Stewart Title Guaranty paid the Bank's defense costs in the Andrews Dixon Action

10

throughout the entire litigation.  Furthermore, it funded the settlement of the Andrews Dixon

11

Action, resulting in a complete dismissal of that action and the removal of the alleged

12

encumbrance at no cost to the Bank.  Thus, this case should be over.  Stewart Title Guaranty has

13

fully performed all obligations required of it under the Policy and has put the Bank's lien in

14

exactly the position the Bank claims it should be.

15

     However, rather than dismissing this action, the Bank has now amended its complaint to

16

change its theory of liability once again.  The Bank continues to assert claims for breach of

17

contract and breach of the covenant of good faith and fair dealing against Stewart Title Guaranty,

18

but now claims damages of more than $8.7 million against Stewart Title Guaranty.  The lynchpin

19

of the Bank's new theory is that Stewart Title Guaranty took too long to resolve the Andrews

20

---

21

[1]  According to the Bank's allegations, in 2006, the Bank lent $10.8 million to R&B Land
Investments, LLC ("R&B") to fund the purchase of a piece of property owned by Andrews

22

Dixon LLP ("Andrews Dixon") in Dixon, California (the "Property").  The Bank received a deed
of trust on the Property as security for its loan and purchased a lender's title insurance policy

23

from Stewart Title Guaranty Company (the "Policy").  Subsequently, R&B defaulted on the loan.
In 2008, Andrews Dixon sued the Bank, alleging that Andrews Dixon's interest in the property

24

was senior to the Bank's interest based on an unrecorded Option Agreement that Andrews Dixon
and R&B executed prior to the close of escrow, which the Bank allegedly had knowledge of

25

prior to the close of escrow.  After filing its lawsuit, Andrews Dixon recorded a *lis pendens* (i.e.,
a notice of the pendency of its lawsuit) against the Property.  The Bank tendered the defense of

26

the Andrews Dixon Action to Stewart Title Guaranty.  While the Andrews Dixon Action was
pending, the Bank foreclosed on the Property.

27

28

Dixon Action and to remove the alleged encumbrance, and that, in the meantime, the Bank was unable to sell the Property and the market value of the Property fell. The Bank contends that Stewart Title Guaranty is liable for the decline in the market value of the Property during the time the Andrews Dixon Action was pending.

The Bank's claims fail as a matter of law for multiple, independent reasons.

*First,* to the extent the Bank continues to assert claims against Stewart Title Guaranty in connection with the defense and indemnification of the Andrews Dixon Action, those claims clearly fail. Stewart Title Guaranty paid the Bank's defense costs in that action and funded the settlement of that action, resulting in a dismissal with prejudice of the Andrews Dixon Action at no cost to the Bank. Accordingly, there was no withholding of benefits under the Policy, and the Bank suffered no damages. As a result, the Bank cannot state a claim for breach of contract or breach of the covenant of good faith and fair dealing in connection with the defense or indemnification of the Andrews Dixon Action.

*Second*, to the extent the Bank alleges that Stewart Title Guaranty is liable for failing to have the *lis pendens* that Andrews Dixon recorded on the Property lifted sooner, the Bank's claims clearly fail. The *lis pendens* (notice of pendency of action) – which was filed against the Property on February 21, 2008 – is a post-policy event. Title insurance policies, such as the Bank's policy here, only cover defects or encumbrances in existence as of the date of the policy. In other words, as *a matter of law*, the filing of the *lis pendens* is not covered under the Policy.

*Third,* the Bank's claims fail because Stewart Title Guaranty resolved the litigation that asserted the alleged encumbrance (the Option Agreement that Andrews Dixon contended had priority over the Bank's lien) favorably to the Bank. Under Section 8(b) of the Conditions and Stipulations of the Policy, in the event of any litigation, Stewart Title Guaranty shall have no liability for loss or damages until there has been a final determination by a court, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured. Here, of course, Plaintiffs do not allege that there was a final determination by the Andrews Dixon court adverse to the Bank's lien. To the contrary, through settlement of that action, Andrews Dixon released its claim to priority over the Bank's lien so that the Bank now owns the

1    property free and clear.  Thus, under the Policy language, as *a matter of law*, the Bank has no

2    claim.

3          *Fourth*, the Bank's claims fail as a matter of law because the Bank does not allege a

4    covered loss resulting from the alleged encumbrance.  The Bank's primary claim of loss is that

5    the market value of the Property declined by at least $6.5 million during the time the Andrews

6    Dixon Action was pending.  However, this is not a loss *caused by* the alleged title defect and is

7    *not* a covered loss under the Policy.  A title insurance policy indemnifies against loss resulting

8    from an insured-against title defect.  It is not a guaranty of the value of the property, and it is not

9    mortgage insurance.  Just as Stewart Title Guaranty would have no right to recover an increase in

10   the market value of the Property while litigation was pending, so too, Stewart Title Guaranty has

11   no responsibility for a decline in the market value of the Property while litigation is pending.

12   Plaintiff's request for "carrying costs" is also unavailable as *a matter of law*, as such costs would

13   exist regardless of whether there was a title defect.  And Plaintiff's interest claim fails in the

14   absence of underlying damages.

15          For these reasons, the Second Amended Complaint fails to allege either a breach of the

16   Policy or resulting damages, and the Bank's purported claims for breach of contract and breach

17   of the implied covenant of good faith and fair dealing should be dismissed.  Because the defects

18   in the Bank's claims cannot be cured by amendment, the claims should be dismissed without

19   leave to amend.

20   **II.    STATEMENT OF FACTS[2]**

21          **A.    The Title Insurance Policy**

22          On July 17, 2006, the Bank made a $10,800,000 loan to R&B, a real estate development

23   company, to fund the Property owned by Andrews Dixon in the City of Dixon in Solano County.

24

25   _____

26   [2]  The Statement of Facts is based on facts alleged in the Bank's Second Amended Complaint (or
     "SAC"), as well as facts of which the Court may take judicial notice.  Stewart Title Guaranty
27   does not concede the truth of the Bank's factual allegations.

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1   *See* SAC ¶ 3 & Exh. A (Policy), Schedule A.[3]  This loan was secured by a Deed of Trust in favor

2   of the Bank.  SAC ¶ 3.

3           In connection with this transaction, Stewart Title Guaranty underwrote the Policy,

4   effective July 17, 2006, which provides title insurance to the Bank in the amount of $10,800,000

5   for the Deed of Trust.  SAC Exh. A (Policy), Schedule A.  The Policy indemnifies the Bank

6   "against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, *sustained*

7   *or incurred by the insured by reason of*" a defect in or lien or encumbrance on the title,

8   unmarketability of the title, or the priority of any lien or encumbrance over the lien of the insured

9   mortgage upon the title.  Policy, at 1 (emphasis added).   Such indemnification is "subject to the

10  exclusions from coverage, the exceptions from coverage contained in Schedule B and the

11  Conditions and Stipulations."  Policy, at 1.[4]  The Policy also provides that Stewart Title Guaranty

12  will pay attorneys' fees and costs "incurred in defense of the title or the lien of the insured

13  mortgage, as insured, but only to the extent provided in the Conditions and Stipulations."  *Id.*

14          Section 4(b) of Conditions and Stipulations provides Stewart Title Guaranty with the

15  right to take legal action in order to establish the insured's mortgage as insured.  Policy, at 3.

16  "Whenever the Company [Stewart Title Guaranty] shall have brought an action *or interposed a*

17  *defense* as required or permitted by the provisions of this policy, the Company may pursue any

18  litigation to final determination by a court of competent jurisdiction . . . ."  Policy, at 3 (Conds. &

19  Stips. § 4(c)) (emphasis added).

20  _____

21  [3]  The SAC erroneously and irrelevantly accuses Stewart Title Guaranty of altering the Policy.
    In fact, the Bank itself attached the correct version of the Policy to its original Complaint in this
22  action.  Docket No. 2, Exh. 1.  The Bank attached an earlier, superseded version of the Policy to
    the SAC.  For purposes of this motion, however, the issue is irrelevant:  the relevant Policy
23  provisions are the same in both versions of the Policy, and Stewart Title Guaranty cites only to
    the Policy attached to the SAC.
24

25  [4]  One of the enumerated exclusions is that any dispute that arises from an adverse claim or
    encumbrance that is not known to Stewart Title Guaranty, not recorded in the public records at
26  the date of the Policy, but known to the Bank and not disclosed in writing to Stewart Title
    Guaranty prior to the effective date of the Policy is excluded from coverage.  Policy, at 2
27  (Exclusion 3(b)).

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

B.      **The Andrews Dixon Action**

On February 11, 2008, Andrews Dixon (the original owner of the Property) commenced an action, captioned *Andrews Dixon LLC v. Bank of Sacramento et al.*, Case No. FCS030940 (the "Andrews Dixon Action"), against the Bank and others in the Superior Court of Solano County.  SAC ¶ 5; Request for Judicial Notice in Support of Motion to Dismiss ("RJN") Exh. A (Second Amended Complaint in Andrews Dixon Action (the "Andrews Dixon Complaint")) ¶ 24.  Andrews Dixon asserted that its interest in the Property was senior to the Bank's interest based on an unrecorded Option Agreement that Andrews Dixon and R&B (the purchaser) executed prior to the close of escrow for the purchase funded by the Bank.  *See* RJN Exh. A ¶¶ 10-16, 24; SAC ¶¶ 5-6.  Andrews Dixon asserted that the Option Agreement set out various covenants that ran with the land and bound all successors in interest and that any successor to the Property took the Property subject to the covenants, encumbrances, and conditions in the Option Agreement.  RJN Exh. A ¶¶ 10-16.

The Andrews Dixon Complaint further alleged that the Bank, as part of its due diligence prior to agreeing to issue a $10,800,000 loan to R&B, reviewed all of the underlying agreements, including the Option Agreement.  *Id.* ¶¶ 19-20.  Thus, the Andrews Dixon Complaint asserted that, although the Option Agreement was unrecorded, the Bank had notice of its terms and provisions prior to providing its loan and prior to recording its Deed of Trust, thereby making the Bank's Deed of Trust on the Property subordinate to the Option Agreement.  *Id.* ¶¶ 21, 24.

The Andrews Dixon Complaint further alleged that, in late 2007, R&B defaulted on the loan and that, notwithstanding its knowledge of the Option Agreement, the Bank nonetheless elected to purchase the Property at the subsequent foreclosure sale.  *Id.* ¶¶ 23-24, 26.  Andrews Dixon alleged that the Option Agreement, among other things, obligated the owner of the Property (now the Bank) to exchange the Property for a different parcel that is part of the larger real estate development project.  *Id.* ¶ 14.

C.      **The *Lis Pendens* and the Filing by the Bank's Own Counsel of a Motion to Expunge the *Lis Pendens***

After filing its lawsuit, Andrews Dixon filed a *lis pendens* against the Property on

February 13, 2008.  SAC ¶ 6.  In response, on March 13, 2008, the Bank moved to expunge the *lis pendens*.  RJN Exh. C (Mem. P&A ISO Motion to Expunge Notice of Pendency of Action).  The motion was filed by the Bank's *own selected counsel*, Boutin Gibson Di Giusto Hodell Inc. (the "Boutin Firm"), the same counsel that filed this action on the Bank's behalf.  RJN Exh. C.[5]

**D.    The Bank's Tender of Defense to Stewart Title Guaranty**

On February 21, 2008, the Bank's counsel notified Stewart Title Guaranty of the filing of the Andrews Dixon Action and tendered the Bank's defense of that action to Stewart Title Guaranty.  SAC ¶ 9.  On March 20, 2008, Stewart Title Guaranty advised the Bank's counsel in writing that it agreed to accept the tender without a reservation of rights.  *Id.* ¶ 10.  The March 20, 2008 letter stated that Stewart Title Guaranty was accepting the tender without a reservation of rights "[b]ased on the representations made in [the Bank's] letter to Stewart dated March 11, 2008" and that "*if facts come to light later during the litigation we will advise if we need to re-assert any applicable sections of the policy*."  RJN Exh. B (March 20, 2008 Letter) (emphasis added).  Upon accepting the Bank's tender, Stewart Title Guaranty retained the law firm of Bardellini, Straw, Cavin & Bupp, LLP (the "Bardellini Firm") to represent the Bank.  SAC ¶ 11.

**E.    The Court's Finding on the Motion to Expunge**

On August 15, 2008, the Bank's motion to expunge the *lis pendens* was denied by the court.  RJN Exh. D (Order After Hearing).  In denying the Bank's motion, the court found that the Bank had actual knowledge of the Option Agreement before funding the sale of the Property:

> *Prior to close of escrow, defendant Bank of Sacramento had actual knowledge of the Option Agreement and memorandum thereof.*  Defendant Bank of Sacramento is not a bona fide purchaser.  A lender is not entitled to ignore information that comes to it from outside the chain of title.  *Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 531.  An unrecorded instrument is valid between the parties to it and those who have notice of it.  (Civil Code § 1217).

RJN Exh. D (emphasis added).

---

[5]  The Boutin Firm originally represented the Bank in the Andrews Dixon Action.  After Stewart Title Guaranty reserved its rights, discussed *infra* section II.F, the Boutin Firm again represented the Bank in that action.

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

F.   **The March 16, 2009 Reservation of Rights Letter**

On March 16, 2009, based upon the court's finding in the Andrews Dixon Action that the Bank had actual knowledge of the Option Agreement, which conflicted with the Bank's prior representations to Stewart Title Guaranty, and Stewart Title Guaranty's further investigation of the circumstances related thereto, Stewart Title Guaranty's counsel sent a letter to the Bank, advising it that Stewart Title Guaranty was reserving its rights to deny coverage to the Bank in the Andrews Dixon Action (the "Reservation of Rights Letter").  *See* SAC ¶ 19; RJN Exh. E (March 16, 2009 Reservation of Rights Letter).  The letter further advised the Bank that, because the reservation of rights created a potential conflict of interest, the Bank could choose its own counsel for its defense in the Andrews Dixon Action.  SAC ¶ 19; RJN Exh. E at 3.  The letter made clear that Stewart Title Guaranty would continue to defend the Bank by paying its defense costs.  RJN Exh. E at 2-3, 9-11.  The SAC's allegations concede this.  *See* SAC ¶ 19 (discussing the fact that Stewart Title Guaranty offered to provide the Bank independent counsel and agreed to pay for those costs).  The Reservation of Rights Letter further advised the Bank that Stewart Title Guaranty intended to file a declaratory relief action to seek a judicial determination of the extent of its obligations to the Bank in the Andrews Dixon Action.  *Id.* ¶ 19(f).

G.   **The Filing of This Action**

The next day, on March 17, 2009, before Stewart Title Guaranty filed a declaratory relief action, the Bank filed its own action against Stewart Title Guaranty in Sacramento Superior Court.  That action sought a declaratory judgment that Stewart Title Guaranty had a duty to defend the Bank in the Andrews Dixon action and also asserted claims for breach of contract and breach of implied covenant of good faith of fair dealing.  Stewart Title Guaranty removed the action to this Court on the basis of diversity jurisdiction.  On March 18, 2009, Stewart Title Guaranty filed a declaratory relief action in this Court, captioned *Stewart Title Guaranty Company v. Bank of Sacramento*, No. 2:09-cv-00766 JAM KJM, seeking a declaratory judgment that it had no duty to defend or to indemnify the Bank in the Andrews Dixon Action.  Stewart Title Guaranty's action and the Bank's action were related, and both actions were assigned to this Court.  On March 31, 2009, before Stewart Title Guaranty's response to the Bank's March

7

17, 2009 Complaint was due, the Bank filed a First Amended Complaint.  Docket No. 14.

Thereafter, Stewart Title Guaranty filed a motion to dismiss the breach of contract and bad faith claims contained in the First Amended Complaint, Docket No. 16, and the Bank filed a motion to stay both actions pending resolution of the Andrews Dixon Action, Docket No. 22.  On May 29, 2009, the Court orally granted the Bank's motion to stay and deferred ruling on the motion to dismiss in light of the stay.  The Court's ruling was memorialized in a written order filed June 9, 2009.  Docket No. 46.

### H.     Resolution of the Andrews Dixon Action

While this action was stayed, the Andrews Dixon Action settled.  SAC ¶ 27.  The settlement resulted in the dismissal of the Andrews Dixon Action and the removal of the *lis pendens* on January 21, 2010.  SAC ¶ 27.  Stewart Title Guaranty paid $2.1 million to fund the settlement of the Andrews Dixon Action, resulting in a complete release and dismissal with prejudice of the Bank without any payment on its part, as well as a withdrawal of the *lis pendens* and a release and termination of the Option Agreement that Andrews Dixon had alleged had priority over the Bank's deed of trust.  RJN Exh. F (*Andrews Dixon* Settlement Agreement) ¶¶ 1, 3, 5(b); SAC ¶ 27; RJN Exh. G (Release and Notice of Termination of Memorandum of Option Agreement and Option Agreement).  After the Andrews Dixon Action was fully resolved, STG dismissed its declaratory relief action without prejudice.

### I.     The Bank's Further Demand

Thereafter, on February 16, 2010, the Bank made a further demand on Stewart Title Guaranty, demanding that Stewart Title Guaranty pay the Bank an additional $8.7 million.  SAC ¶ 30.  The Bank claimed damages of at least $6.5 million based on alleged diminution in the value of the property during the time the Andrews Dixon *lis pendens* was pending, at least $300,000 in carrying costs, and at least $1.9 million in prejudgment interest.  SAC ¶ 30 & RJN Exh. H (February 16, 2010 Demand Letter).  Stewart Title Guaranty denied the Bank's demand on February 27, 2010.  SAC ¶ 31.

1   III.    **ARGUMENT**

2       A.    **Legal Standard**

3       Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of claims upon which

4   relief cannot be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is proper

5   where there is a lack of a cognizable legal theory or an absence of sufficient facts alleged under a

6   cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

7   In ruling upon a motion to dismiss, while all allegations of material fact must be accepted as true,

8   a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and

9   sweeping legal conclusions cast in the form of factual allegations."  *Doyle v. Safeco Ins. Co. of*

10  *Am.*, No. 1:08-cv-01587, 2008 WL 5070055, at *3 (E.D. Cal. Nov. 26, 2008) (citation omitted).

11  *See also Braun v. Allstate Ins. Co.*, No. 2:08-cv-00283, 2008 WL 3155275, at *2 (E.D. Cal. Aug.

12  5, 2008).  In ruling on a motion to dismiss, the court may consider not only the allegations of the

13  complaint but documents whose contents are referenced in the complaint – even if not attached

14  to the complaint – as well as other matters that are subject to judicial notice.  *In re Stac Elecs.*

15  *Sec. Litig.,* 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *Doyle*, 2008 WL 5070055, at *3.

16      B.    **The SAC Does Not State a Claim for Breach of Contract or Breach of**
            **Covenant of Good Faith and Fair Dealing in Connection with the Defense or**
17          **Indemnification of the Andrews Dixon Action.**

18      This case, as originally brought, alleged that Stewart Title Guaranty had failed to defend

19  the Bank in the Andrews Dixon Action.  Despite the fact that Stewart Title Guaranty has paid the

20  Bank's defense costs in the Andrews Dixon Action and has funded the settlement of that action –

21  with the Bank paying *no* money to defend or settle that action – the Bank inexplicably continues

22  to assert claims for breach of contract and bad faith premised on the theory that the Bank has

23  failed to defend and/or indemnify the Bank in the Andrews Dixon Action.  *See, e.g.,* SAC ¶¶

24  34(a) (alleging that Stewart Title Guaranty "knowingly defend[ed] the bank with conflicted

25  counsel in the Andrews Dixon Action"), 34(e) (alleging that Stewart Title Guaranty "provide[d]

26  an inadequate defense").  Plaintiff fails to state a claim for breach of contract or bad faith based

27  on these allegations.

28

9

1                    1.        **The SAC Fails to Plead a Breach of Contract Claim.**

2              Under California law, to plead and to prove a breach of contract claim under an insurance

3      contract, a plaintiff must establish:  (1) the existence of a contract; (2) plaintiff's performance or

4      excuse for non-performance; (3) defendant's breach; and (4) resulting damage to plaintiff.

5      *Sherman v. Paul Revere Life Ins. Co.*, No. CV 03-5730, 2004 WL 4946213, at *4 (C.D. Cal. Feb.

6      17, 2004); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990).

7      Here, the SAC fails to plead that Stewart Title Guaranty has breached the Policy or that the Bank

8      suffered any resulting damages.

9                              a.        **The Breach of Contract Claim Must Be Dismissed for Failure**
10                                       **to Allege that Benefits Were Withheld.**

11             California law is well settled that, absent a withholding of benefits due under the

12     insurance policy, a breach of contract claim against an insurer cannot stand.  *See, e.g., Love v.*

13     *Fire Ins. Exch.,* 221 Cal. App. 3d 1136, 1151 n.10 (1990) ("[A]bsent an actual withholding of

14     benefits due, there is no breach of contract and likewise no breach of the insurer's implied

15     covenant.") (emphasis omitted); *Braun*, 2008 WL 3155275, at *4 (finding that, absent an actual

16     withholding of benefits, there is neither a breach of contract nor a breach of the implied

17     covenant); *Hergenroeder v. Travelers Prop. Cas. Ins. Co.*, 249 F.R.D. 595, 615 (E.D. Cal. 2008)

18     (same).

19             Here, the SAC does not and cannot allege that Stewart Title Guaranty failed to pay its

20     defense costs or to indemnify it in the Andrews Dixon Action.  Indeed, as the SAC concedes, and

21     as the Reservation of Rights Letter provides, Stewart Title Guaranty continuously paid the

22     Bank's defense costs in the Andrews Dixon Action.  *See* SAC ¶ 19; RJN Exh. E.  Stewart Title

23     Guaranty also paid to settle the Andrews Dixon Action on the Bank's behalf.  *See* SAC ¶ 27;

24     RJN Exh. F.

25             The SAC alleges that Stewart Title Guaranty delayed responding to a request to attend a

26     mediation and rejected an earlier proposed settlement.  SAC ¶ 26.  But this plainly does not

27     allege a breach of the Policy.  An insurer is only obligated to indemnify an insured in a third-

28     party action where a judgment has been entered against the insured on a covered claim.  *See Buss*

                                                      10

1   *v. Superior Court*, 16 Cal. 4th 35, 45-46 (1997).  Even where an insured alleges that the insurer is

2   liable for failing to settle a covered claim, "it is well established that an insured is not damaged

3   by the insurer's 'wrongful' failure to settle a claim unless the insured suffers a judgment in

4   excess of policy limits."  *Continental Ins. Co. v. Superior Court*, 37 Cal. App. 4th 69, 85 n.11

5   (1995).  Here, of course, the SAC does not and cannot allege that the Bank suffered an adverse

6   judgment of any sort.  Indeed, the Andrews Dixon Action was resolved favorably to the Bank

7   without the Bank paying any of its own money.  *See* RJN Ex. F ¶¶ 1, 3.  In short, there has been

8   no withholding of benefits due under the Policy, and, thus, the Policy has not been breached.

9                      **b.      The SAC Fails to Plead that the Bank Suffered Any Damages.**

10          The breach of contract claim should be dismissed for a second, related reason:  the failure

11   to plead damages.  Where, as here, a plaintiff does not allege that it failed to receive economic

12   benefits due under the contract, it has suffered no damages as a matter of law.  *Sherman*, 2004

13   WL 4946213, at *4 (finding that plaintiff failed to allege damages and dismissing the breach of

14   contract claim where plaintiff received the payments due under the insurance policy, albeit under

15   a reservation of rights).  As the *Sherman* court explained, the maximum recovery on a contract

16   claim is limited to the economic equivalent of performance of the contract.  2004 WL 4946213,

17   at *4.  In other words, where a plaintiff has received the full economic benefits it is owed under

18   the policy, it has suffered no damages.  *Id.*; *see also Hood v. Harford Life & Accident Ins. Co.*,

19   No. 2:07-cv-01634, 2009 WL 453115, at *3 (E.D. Cal. Feb. 23, 2009) (finding that plaintiff

20   failed to establish the requisite damages for a breach of contract claim where she failed to show

21   any cognizable economic damages).

22          Here, as discussed above, Stewart Title Guaranty paid the Bank's defense costs in the

23   Andrews Dixon Action and paid to resolve that action favorably to the Bank.  Thus, the Bank has

24   received its full economic benefits due under the Policy, and it has not, and cannot, plead that it

25   has suffered any damages as a result of Stewart Title Guaranty's purported breach of any duty to

26   defend or indemnify the Bank in the Andrews Dixon Action.

27

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1

2

**2.   The SAC Fails to Plead a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

3      To state a cause of action for breach of the covenant of good faith and fair dealing, the

4  Bank must allege (1) that benefits due under the policy were withheld and (2) the withholding

5  was unreasonable or without proper cause.  *See Love*, 221 Cal. App. 3d at 1151; *Doyle*, 2008 WL

6  5070055, at *5; *Progressive W. Ins. Co. v. Dallo*, No. 07CV1003, 2008 WL 413752, at *5 (S.D.

7  Cal. Feb. 14, 2008).[6]

8      In addition, the Bank must allege an actual economic loss proximately caused by Stewart

9  Title Guaranty's purported misconduct.  *Emerald Bay*, 130 Cal. App. 4th at 1094 ("Since a tort

10  action for breach of the covenant of good faith and fair dealing 'is one seeking recovery of a

11  *property* right, not personal injury,' to prevail the insured must show proof of economic loss.")

12  (citation omitted) (emphasis in original); *see also Continental Ins. Co.*, 37 Cal. App. 4th at 86.

13      Here, the SAC fails to allege that Stewart Title Guaranty has withheld any benefits and

14  fails to plead any actual economic harm.  To the contrary, as discussed above, Stewart Title

15  Guaranty paid the Bank's defense costs in the Andrews Dixon Action and paid to settle that

16  action, resulting in the Bank's dismissal with prejudice without any payment by the Bank.

17  Accordingly, the SAC fails to state a claim against Stewart Title Guaranty for breach of the

18  covenant of good faith and fair dealing.

19      **C.   The *Lis Pendens* Does Not Fall Within Policy Coverage.**

20      Faced with the inability to state a claim for failure to defend or to indemnify the Bank in

21  the Andrews Dixon Action, the Bank tries to recharacterize its claim as a claim for loss based on

22  unmarketability of the title due to the Andrews Dixon *lis pendens.  See, e.g.,* SAC ¶ 33 ("As a

23  result of the unmarketability of the title from the date of foreclosure until January 21, 2010, when

24

25  [6]  *See also Sherman*, 2004 WL 4946213, at *5 (finding that the complaint failed to state a claim
   for breach of the covenant where plaintiff acknowledged benefits had been paid to the present

26  date); *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1093-94
   (2005) (finding no breach in part because all benefits due under the policy were paid by co-

27  insurers).

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1   the lis pendens was removed, the Bank suffered substantial loss and damages covered by the

2   Policy.").  The Bank's attempt clearly fails.

3          As a matter of law, any losses arising from the *lis pendens* are not covered under the

4   Policy.  In *Safeco Title Ins. Co. v. Moskopoulos,* the Court addressed the duty of Safeco under a

5   title insurance policy to defend against an action brought by the sellers of the relevant property to

6   rescind the sale.  116 Cal. App. 3d 658, 663 (1981).  The insured argued, among other things,

7   that there was coverage because the *lis pendens* recorded as part of the action rendered the title

8   unmarketable.  *Id.* at 665.  The court rejected the argument, holding, "*[a]ny effect the recording*

9   *of the Klass lis pendens had on the marketability of the title occurred after the effective date of*

10  *the policy and is outside the policy coverage.*"  *Id.* at 666 (emphasis added).  The same is true

11  here.  The Andrews Dixon *lis pendens* was recorded long after the effective date of the Policy.[7]

12  The Policy only covers title defects in existence at the time the Policy is issued.  Policy, at 2

13  (Exclusion 3(d)); *Rosen v. Nations Title Ins. Co.*, 56 Cal. App. 4th 1489, 1499 (1997).  Any

14  effect the *lis pendens* had on the marketability of the title occurred after the effective date of the

15  Policy and is outside Policy coverage.  *Safeco,* 116 Cal. App. 3d at 666.[8]

16        **D.**    **The SAC Does Not State a Claim Against Stewart Title Guaranty for Loss**
                  **Under the Policy, Because the Alleged Encumbrance Was Resolved by**

17                  **Litigation Favorably to the Bank.**

18          The Bank also does not state a claim for breach of contract or bad faith against Stewart

19  Title Guaranty, because Stewart Title Guaranty successfully resolved the alleged encumbrance

20  through litigation.  Under Section 8(b) of the Conditions and Stipulations of the Policy, "[i]n the

21  event of any litigation . . . the Company shall have no liability for loss or damage until there has

22  been a final determination by a court of competent jurisdiction, and disposition of all appeals

23

24  [7]  The effective date of the Policy is July 17, 2006.  Policy, Schedule A.  The *lis pendens* was

25  recorded on February 13, 2008.  SAC ¶ 6.

26  [8]  *See also* Alice L. Akawi, et al., *California Title Insurance Practice* § 6.44 (CEB 2d ed. 2009

27  update) (noting that while the claims underlying a *lis pendens* could fall under policy coverage,
     the post-policy *lis pendens* itself does not).

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1   therefrom, adverse to the title or to the lien of the insured mortgage, as insured." Policy, at 4.

2       This Section, together with the rest of the Policy, precludes the Bank's claims. The SAC

3   does not and cannot allege that there was a final determination by the Andrews Dixon court

4   adverse to the Bank's lien. To the contrary, through settlement of that action funded by Stewart

5   Title Guaranty, the alleged encumbrance was removed: Andrews Dixon released its claim to

6   priority over the Bank's lien. *See supra* Section II.G. Accordingly, Stewart Title Guaranty has

7   no liability to the Bank under the Policy. Policy, at 4 (Conds. & Stips. § 8(b)).[9]

8       The Bank apparently takes the position that Stewart Title Guaranty is nonetheless liable

9   because it did not resolve the litigation "in a reasonably diligent manner" under Section 8(a) of

10  the Policy's Conditions and Stipulations.[10] While Stewart Title Guaranty unquestionably

11  resolved the litigation in a reasonably diligent manner – *i.e.,* in under two years – that is not the

12  relevant inquiry here. Section 8(a) does not apply where, as here, the insurer's conduct falls

13  within the scope of Section 8(b). Moreover, Section 8(a) does not *create* liability that does not

14  otherwise exist; to the contrary, the Section 8 heading is "LIMITATION OF LIABILITY."

15  Section 8(a) does not create an affirmative obligation to clear title – rather, it gives the insurer

16  _____

17  [9] *See also* Policy, at 3 (Conds. & Stips. § 4(c)) ("Whenever the Company [Stewart Title
    Guaranty] shall have brought an action or interposed a defense as required or permitted by the
18  provisions of this policy, the Company may pursue any litigation to final determination by a
    court of competent jurisdiction . . . ."); Policy, at 3 (Conds. & Stips. § 6) ("Upon the exercise by
19  the Company of either of the options provided for in paragraphs a (i) or (ii) [to pay or otherwise
20  settle with other parties for or in the name of an insured claimant any claim insured against under
    the policy], the Company's obligations to the insured under this policy for the claimed loss or
21  damage, other than the [settlement] payments required to be made, shall terminate . . . ."); Policy,
    at 4 (Conds. & Stips. § 7) ("This policy is a contract of indemnity against actual monetary loss or
22  damage sustained or incurred by the insured claimant who has suffered loss or damage by reason
23  of matters insured against by the policy and only to the extent herein described.").

24  [10] *See* Policy, at 4 ("[Section] 8.  LIMITATION OF LIABILITY.  (a) If the Company
    establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a
25  right of access to or from the land, or cures the claim of unmarketabilty of title, or otherwise
26  establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by
    any method, including litigation and the completion of any appears therefrom, it shall have fully
27  performed its obligations with respect to that matter and shall not be liable for any loss or
    damage caused thereby.") (emphasis omitted).

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1    the right to take action to remove the alleged encumbrance (which happened here).  Policy, at 3

2    (Conds. & Stips. § 4).

3        Although no California court has directly addressed the interplay of comparable

4    provisions to Section 8(a) and 8(b), several persuasive out-of-state decisions have adopted the

5    interpretation set forth herein, and the interpretation is in accord with California law.  In *Lawyers*

6    *Title Ins. Co. v. Synergism One Corp.*, 572 So. 2d 517 (Fla. Dist. Ct. App. 1990), Section 7 of the

7    policy contained similar language to Section 8 of the Policy here.[11]  There, a survey relied upon

8    by the insurer failed to reveal that an adjacent landowner farmed a portion of the land.  The

9    insured and the neighbor got into a dispute.  The insured sued to eject the neighbor and won the

10   case.  However, the neighbor appealed.  The insurer settled the dispute by paying the neighbor

11   for a quit claim deed in favor of the insured.  The insured then sued the insurer for damages

12   caused by construction delays while the litigation was pending.  The trial judge held that the two

13   years and nine months the insurer took to clear title was an unreasonable amount of time and

14   awarded the insured damages.  The Court of Appeal *reversed,* holding that the trial court

15   incorrectly relied on paragraph 7(a) instead of paragraph 7(b).  572 So. 2d at 518.  The Court

16   held that the "reasonable time" requirement of paragraph 7(a) did not apply where, as here, there

17   was litigation to address the alleged title defect.  *Id.*  The Court explained,

18        A title policy indemnifies rather than guarantees the state of the insured
          title.  The policy does not guarantee that litigation will not occur, but, in
19        fact, assumes the opposite, that many types of title defect litigation can
          occur.  The insured's claim must await an adverse title determination by a
20

21   [11]  Paragraph 7 of the *Synergism* policy read:  "No claim shall arise or be maintainable under this
22   policy (a) if [the insurer], after having received notice of an alleged defect, lien or encumbrance
     insured against hereunder, by litigation or otherwise, removes such, lien or encumbrance or
23   establishes the title, as insured, within a reasonable time after receipt of such notice; (b) in the
     event of litigation until there has been a final determination by a court of competent jurisdiction,
24   and disposition of all appeals therefrom, adverse to the title, as insured . . . ."  572 So. 2d at 518.
     The *Synergism* case involved an owner's policy; there is an even stronger argument limiting
25   liability with respect to a lender's policy, which is what the Bank received here.  *See, e.g., Karl
     v. Commonwealth Land Title Ins. Co.*, 20 Cal. App. 4th 972, 979 n.2 (1993) (noting that liability
26   for loss is more limited in cases involving lender's policies, even where the policy language is
27   comparable).

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

court.  "The claim only lies once a court speaks, and not before, and not if the court's judgment is favorable."

*Id.* (citation omitted).

Similarly, in *First Federal Savings Bank of Brunswick v. Stewart Title Guaranty Co.*, interpreting comparable policy language, the court found that "[b]y clear and unambiguous language, . . . Stewart Title had the option to establish by litigation the title as Stewart Title insured it in each case and Stewart Title had no liability for loss or damage where litigation ensued until a court determined the title was not as it was insured to be."  451 S.E.2d 916, 920 (S.C. Ct. App. 1995).  The court found that there were no claims on which Stewart Title was required to act in a "reasonable" time once it elected to litigate.  *Id.* at 921.  The court further found that there were no losses, because the litigation led to favorable results.  *Id.*

Again, in *RTC Mortgage Trust 1994 N-1 v. Fidelity National Title Ins. Co.*, the court, interpreting comparable policy language, rejected the insured's argument that, because litigation to resolve title priority took over four years, the insurer breached the policy by not clearing title in a reasonable amount of time.  58 F. Supp. 2d 503, 533 (D. N.J. 1999).  The court explained,

> The time in which it takes to obtain a final determination, including disposition of all appeals, is outside the control of the defending title insurance company.  No reasonable insured could expect a title insurance company to institute or defend a title priority suit knowing that it may have to abandon a meritorious claim or defense because of delays at the courthouse.

*Id.*  In short, the court refused to apply the reasonable time requirement of paragraph 7(a) to paragraph 7(b).

The same interpretation applies here.  Section 8(b) is unambiguous and self-contained.  It provides that, in the event of litigation, there can be no liability unless and until there is a final adverse determination by the court.  The SAC does not and cannot allege that there was a final adverse determination by the Andrews Dixon court.  Section 8(b) contains no reasonable diligence requirement, and there is no basis, as a matter of contract interpretation, for applying the reasonable diligence requirement of Section 8(a) to Section 8(b).

This interpretation is consistent with California law.  In *Continental Insurance Co*, 37

16

1   Cal. App. 4th at 85 n.11, the court rejected as a matter of law a claim that the insurer was liable

2   for taking too long to settle the underlying action:

> Plaintiffs also argue that Continental's failure to settle earlier caused them
> damage.  However, it is well established that an insured is not damaged by
> the insurer's 'wrongful' failure to settle a claim unless the insured suffers
> a judgment in excess of policy limits.  *Thus, even if we assume that*
> *Continental delayed unreasonably in waiting four years to settle the*
> *underlying action, such delay caused no economic loss to the plaintiffs.*

7   (emphasis added) (internal citations omitted).  Here, too, Stewart Title Guaranty has no liability

8   as a matter of law for allegedly delaying unreasonably to settle the Andrews Dixon Action.

9       By contrast, the Bank's interpretation would render the Policy provisions allowing for

10  litigation, and the limitations on the insurer's liability in the event of litigation, meaningless.[12]  It

11  would put the insurer in an untenable position in which it would be required under the policy to

12  capitulate to unreasonable claims and unreasonable settlement demands, despite valid defenses,

13  because the market value of the property might decline during the course of the litigation.[13]

14  Even if the insurer went to trial and obtained a complete victory, under the Bank's theory, it still

15

16  [12] The Bank may argue that *Nebo, Inc. v. Transamerica Title Co.*, 21 Cal. App. 3d 222 (1971),
    supports its interpretation, but *Nebo* is plainly distinguishable.  *Nebo* did *not* address whether the
17  "reasonable time" requirement applies to a section like Section 8(b) that specifically addresses
    claims for loss where litigation is pursued, and which limits such claims to situations where the
18  court makes a final ruling adverse to the title as insured.  Moreover, in *Nebo*, the court found that
    the insurer did not clear title through litigation in any event and only acquired good title through
19  purchase after losing a separate, but decisive case.  *Id.* at 228.

20  [13]   The Bank's own selected counsel in the Andrews Dixon Action  – the Boutin Firm – asserted
21  that the Bank had no liability to Andrews Dixon and that the Bank had numerous meritorious
    defenses that defeated any claim that the Option Agreement had priority over the Bank's lien.
22  *See, e.g.,* Docket No. 23 (Mem. P&A ISO Bank of Sacramento's Motion to Stay, filed Apr. 22,
    2009) at 1 ("It is the Bank's position that the foreclosure extinguished any rights under the
23  Option Agreement, since any encumbrance created thereby was junior in priority to the Deed of
    Trust."); RJN Exh. C (Mem. P&A ISO Motion to Expunge Notice of Pendency of Action, filed
24  Mar. 13, 2008) at 2 (asserting that plaintiff Andrews Dixon "cannot prevail … against Bank of
    Sacramento, because plaintiff's unrecorded interest in the property is subordinate to Bank of
25  Sacramento's first deed of trust on the property"); RJN Exh. I (Mem. P&A ISO Motion for
    Judgment on the Pleadings, filed June 16, 2009) at 5, 8 (contending that "The Option Agreement
26  Is Void *Ab Initio*" and that "Each of Plaintiff's [Andrews Dixon's] Causes of Action Against the
27  Bank Fails as a Matter of Law").

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1    could be liable because the litigation took too long.  That is *not* what title insurance covers.

2           Under the Bank's theory, the court would be required to speculate as to whether a

3    settlement offer could or should have been made or accepted sooner; whether different motions

4    should have been filed or not filed and when; and whether different discovery should or should

5    not have been taken and when, in order to evaluate whether the litigation was resolved with

6    "reasonable diligence."  That is not a reasonable interpretation of the Policy.  For this reason,

7    California law provides, contrary to the Bank's theory, that, even where an insurer rejects a

8    settlement offer, no liability can be imposed unless and until the insured suffers a judgment on a

9    covered claim in excess of policy limits.  *Continental Ins. Co*, 37 Cal. App. 4th at 85 n.11,

10   discussed *supra*.  Moreover, California law provides that an insured *cannot* state a claim against

11   the insurer for the alleged negligence of the insurer-retained defense counsel – which is what the

12   SAC attempts to do.[14]  *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 881-82 (1973) ("[T]he

13   carrier does not become liable for trial counsel's legal malpractice."); H. Walter Croskey, et al.,

14   *California Practice Guide:  Insurance Litigation* § 7:639 (Rutter Group 2009) (An insurer is not

15   "liable for its appointed lawyer's mistakes or negligence in representing the insured.").

16          Accordingly, because Stewart Title Guaranty cleared the Bank's title through litigation in

17   which there was no adverse final determination by the court, Stewart Title Guaranty performed its

18   obligations under the Policy and has no further potential liability to the Bank.

19          **E.      The SAC Does Not State a Claim Against Stewart Title Guaranty, Because It
                      Does Not Allege a Loss Resulting from an Insured-Against Encumbrance or**
20          **Title Defect.**

21          Even if the "reasonable diligence" standard did apply, the Bank's claims still fail as a

22   matter of law, because the Bank does not allege a loss resulting from a covered title defect or

23   encumbrance.  The Bank's primary claim of loss is that the market value of the Property declined

24   by at least $6.5 million during the time the Andrews Dixon Action was pending (specifically,

25

26   _____

27   [14]  *See, e.g.,* SAC ¶ 23 (alleging that counsel retained by Stewart Title Guaranty to represent the
     Bank improperly handled the defense of the litigation).

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1   during the twenty-one month period from the foreclosure in April 2008 until the time the *lis*

2   *pendens* was lifted in January 2010).  SAC ¶ 33.  As a matter of law, this is not a loss caused by

3   a title defect and is not a covered loss under the Policy.

4          A title insurance policy indemnifies against loss *caused by* an insured-against title defect.

5   It is *not* a guarantee of the value of the property, and it is not mortgage insurance.[15]  No reported

6   California case has held a title insurer liable for a diminution in the insured property's value

7   caused by market decline.  Indeed, one commentator has noted that "[n]o published California

8   authority supports an argument that an insured should be compensated for diminution in value

9   caused by market decline."  Wendy J. Watanabe, 448 PLI/Real Property 677, *The Title Insurer's*

10  *Obligation to Pay Indemnity: When Does the Insured's Right to Damages Accrue?* (1999).  An

11  insurer is not liable for such a decline, because a decline in the value of the property due to

12  market conditions is *not* a loss caused by an encumbrance or title defect.  *See, e.g., Karl*, 20 Cal.

13  App. 4th at 985 ("[Lender] cannot make [insurer] pay for his bad investment judgment in

14  securing his loan with a hovel whose value would not satisfy even the first lien.") (citation

15  omitted).[16]

16

17  ─────────────────

    [15]  *See, e.g.,* 3 Harry D. Miller, Miller & Starr, *California Real Estate, Title Insurance* § 7:231
18  (3d ed. 2000) ("By the terms of the policy, the insurer guarantees the validity of the lien, but not
    its value or the value of the security."); *Karl*, 20 Cal. App. 4th at 978 ("The law clearly states
19  that a title insurance policy is a contract of indemnity, not one of guaranty.  The insurer does not
    represent that title is in any particular condition, but only agrees to indemnify to the extent the
20  insured suffers a loss caused by defects in the title or encumbrances on the title."); Policy, at 1, 4
    (Conds. & Stips. § 7) ("This policy is a contract of indemnity against actual monetary loss or
21  damage sustained or incurred by the Insured claimant who has suffered loss or damage by reason
22  of matters insured against by the policy and only to the extent herein described.").

23  [16]  *See also Safeco Ins. Co. of Am. v. J & D Painting,* 17 Cal. App. 4th 1199, 1204 (1993)
    (rejecting insured's claim against painting company for damages based on the diminution in the
24  market value of his property and his inability to sell the property during the time it took to make
    repairs to the house following the painting company's alleged negligence in causing a fire to the
25  house, holding that such damages are not proximately caused by the alleged negligence:
    "Although appellant might have sold his house at a high price but for respondent's negligence,
26  the decline in the market bore no relation whatsoever to the acts of respondent.  Respondent's
    negligence, if such there was, was merely the condition or occasion for the market decline to
27  affect appellant's house."); *Lick Mill Creek Apartments v. Chi. Title Ins. Co.*, 231 Cal. App. 3d
28

                                          19
─────────────────────────────────────────────────
DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1        The Bank's claim for "carrying costs" also fails as a matter of law, because carrying costs

2    are not caused by an insured-against title defect or encumbrance.  *Native Sun Inv. Group v. Ticor*

3    *Title Ins. Co.*, 189 Cal. App. 3d 1265, 1274 (1987) (holding that carrying costs (namely taxes,

4    interest, and other costs associated with owning property and carrying a mortgage) are not

5    available as a matter of law because they are costs a party would have incurred regardless of a

6    defect in title).[17]

7        The Bank's final claim of damages is for $1.9 million in unspecified alleged "lost interest

8    and other damages."  SAC ¶ 33.  This conclusory assertion is insufficient to allege a loss covered

9    under the Policy.  *See, e.g., Doyle*, 2008 WL 5070055, at *3; *Braun*, 2008 WL 3155275, at *2.

10   Moreover, Plaintiffs' February 16, 2010 demand letter makes clear that the $1.9 million is

11   simply a claim for prejudgment interest under California Civil Code Section 3289(b).  RJN Exh.

12   H at 3.  Pre-judgment interest, of course, is not an independent item of damages but is only

13   available, in certain limited circumstances, where other damages are proven.  *See* Cal. Civ. Code

14   § 3287(a); *Leaf v. Phil Rauch, Inc.*, 47 Cal. App. 3d 371, 375 (1975).

---

22   1654, 1661-62 (1991) (holding that defects which impair the market *value* of the property rather
than the marketability of the *title* to the land do not constitute a compensable loss under a title
23   insurance policy).

24   [17]  *See also RTC Mortgage Trust 1994 N-1*, 58 F. Supp. 2d at 534 ("[A] mortgagee's title
insurance policy *does not insure against carrying charges and the lost time value of foreclosure*
25   *proceeds.*  The purpose of a mortgagee title insurance policy is 'to indemnify against loss or
damage sustained by reason of defects of title or liens upon the land[; it] . . . does not guarantee
26   either that the mortgage premises are worth the amount of the mortgage or that the mortgage debt
will be paid.'") (citation omitted) (emphasis added).

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM

1    **IV.      CONCLUSION**

2           For the foregoing reasons, Stewart Title Guaranty respectfully requests that the Court

3    dismiss the Second Amended Complaint without leave to amend.

4    DATED:  April 20, 2010                    SIDLEY AUSTIN LLP

5

6                                                   /s/ Nicole M. Ryan

7                                              SAMUEL R. MILLER
                                               NICOLE M. RYAN
                                               CECILIA Y. CHAN
8

9                                              Attorneys for Defendant,
                                               STEWART TITLE GUARANTY COMPANY
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MP&A
CASE NO. 2:09-cv-00771 JAM KJM