Samuel R. Miller (SBN 066871)
Nicole M. Ryan (SBN 175980)
Cecilia Y. Chan (SBN 240971)
srmiller@sidley.com
nicole.ryan@sidley.com
cecilia.chan@sidley.com
SIDLEY AUSTIN LLP
555 California Street
San Francisco, California  94104
Telephone:    (415) 772-1200
Facsimile:     (415) 772-7400

Attorneys for Defendant
STEWART TITLE GUARANTY COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| BANK OF SACRAMENTO, a California Corporation,<br><br>          Plaintiff,<br><br>vs.<br><br>STEWART TITLE GUARANTY COMPANY, a Texas Corporation,<br><br>          Defendant. | No. 2:09-cv-00771 JAM KJM<br><br>**EXHIBIT E TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

EXHIBIT E

# GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

A LIMITED LIABILITY LAW PARTNERSHIP

1880 CENTURY PARK EAST
12TH FLOOR
LOS ANGELES, CA 90067-1621
TELEPHONE: (310) 552-3400
FACSIMILE: (310) 552-0805
INTERNET: WWW.GGLTS.COM

LAS VEGAS OFFICE
3993 HOWARD HUGHES PARKWAY
SUITE 530
LAS VEGAS, NV 89169-5994

REPLY TO LOS ANGELES OFFICE

AUTHOR'S E-MAIL: MGEIBEL@GGLTS.COM

FILE NO.: 0856.071

JOSEPH W. GIDEN
WILLIAM D. LOCHER
GLENN E. TURNER III
GERALD A. GRIFFIN
ANYA STANLEY
THEODORE L. SENET
BARBARA R. GADBOIS
RICHARD J. WITTBRODT
RONALD S. SOFEN •
MICHAEL B. GEIBEL
GARY E. SCALABRINI
JOSE L. PADILLA, JR.
STEVEN R. CUNEO, JR.
JOHN F. HEUER, JR.
MICHAEL I. WAYNE
MATTHEW L. GRODE •
MARION T. HACK
CHRISTOPHER E. NG
BRENDAN B. PENNEY
BECKY A. PINTAR ♦
POLINA L. ROSS
JERIEL C. SMITH

JAMES T. MONTGOMERY, JR.
RICHARD E. HASKIN
ANDREW O. SMITH
PHILIP C. ZVONICEK
AMY E. JONES •
ALEXIS M. MILLER
VICTOR F. LUKE
LYNN A. MASTANDREA
DENNIS C. KONG
MONTE K. GRIX
TRAVIS W. FEUERBACHER
LYNSEY M. EATON
SETH W. EATON
SARA H. KORNBLATT
MANDY ZHANG

OF COUNSEL
ALFRED FADEL ▲

RETIRED PARTNER
KENNETH C. GIBBS
(Full-Time Neutral)

March 16, 2009

**VIA FEDERAL EXPRESS**

Boutin Gibson Giusto Hodell, Inc.
555 Capital Mall, Suite 1500
Sacramento, CA 95814

**Attn: Michael E. Chase, Esq.**

   Re:  ***Andrews Dixon, LLC v. Bank of Sacramento, et al.***
       Solano Superior Court Case No. FCS 030940
   STGC File No.: S023-0079164-08
   Policy No.:   M-2229-000825979

Dear Mr. Chase:

  Stewart Title Guaranty Company ("Stewart") has retained the above firm to represent Stewart as coverage counsel in this case. We have reviewed your letter dated February 27, 2009 and recent pleadings and documents regarding this matter and have been authorized to respond on behalf of Stewart.

  Please take notice that Stewart Title Guaranty Company hereby reserves its right to deny coverage to the Bank of Sacramento in the above-referenced lawsuit, including the duty to indemnify for any loss, settlement or judgment, and the duty to defend Bank of Sacramento.

  This reservation is based upon information newly discovered and pursuant to "EXCLUSIONS FROM COVERAGE," Section 3 which reads as follows:

   "The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorney's fees or expenses which arise by reason of:

▲ A PROFESSIONAL CORPORATION
• ADMITTED IN CALIFORNIA & NEVADA
♦ ADMITTED IN NEVADA ONLY

768063_1

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 2

    3.    Defects, liens, encumbrances, adverse claims or other matters:

* * *

    (b)    not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; . . ."

Your February 27, 2009 letter also makes reference to settlement discussions regarding the litigation. Please take notice that Stewart reserves the right to deny coverage for any obligation under any settlement negotiated or agreed to without its express consent. We direct the insured's attention to the following provision:

"8.    (b)    In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured."

This notice of reservation follows the recent ruling by the Court denying the insured's motion to expunge the *lis pendens* in which the Court expressly found as follows:

"Prior to close of escrow, defendant Bank had *actual knowledge* of the Option Agreement and memorandum thereof. Defendant Bank is not a *bona fide purchaser*. A lender is not entitled to ignore information that comes to it from outside the chain of title. . . ." [emphasis added.]

Both this finding by the court, and the our review of the evidence and depositions of Bank employees, supports the conclusion that the Bank had "knowledge" (as defined in the Policy) of the Option Agreement as an encumbrance upon the property at the time of issuance of the policy, and that this information was not disclosed in writing to Stewart.

Please be further advised that Stewart will continue its defense of the Bank pursuant to a reservation of its rights to dispute coverage and the duty to defend, and reserves its right to seek reimbursement of all monies paid and obligations incurred in connection with both indemnity and defense. *Buss v. Superior Court. (Transamerica Ins. Co.).* (1997) 16 C4th 35, 51.

768063.1

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 3

We recognize that this reservation of rights creates a potential conflict under Civil Code § 2860, and that the Bank may select counsel of its own choosing to conduct its defense, subject to the requirements set forth in Section 2860, including the limitation that Stewart's obligation to pay independent counsel at rates which are actually paid by the insurer to the attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended.

The basis for Stewart's coverage position is as follows:

**A.   Relevant Facts**

Stewart issued Loan Policy No. M-2229-000825979 [hereinafter "Policy"] with reference to a Deed of Trust and loan made by the Bank of Sacramento for the loan amount of $10,800,000. The Policy was issued effective July 17, 2006. The coverage afforded under the Policy was expressly subject to certain "EXCLUSIONS FROM COVERAGE," which included an exclusion for any loss, damage, costs, attorney's fees or expenses which arise by reason of: "Defects, liens, encumbrances, adverse claims or other matters: . . . (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy."

On February 6, 2008, counsel for the Bank, Boutin Gibson Giusto Hodell, Inc., gave notice of a potential adverse claim arising from an unrecorded Option Agreement between Andrews Dixon and the Bank's borrower R&B Land Investments LLC ("R&B") as set forth in a letter from Andrews Dixon to William Martin, president of the Bank dated January 15, 2008. On February 8, 2006, Mr. Hodell sent a letter to Stewart providing notice that the policy has been amended to delete the Memorandum of Option from Schedule B Part II and transmitting a copy of the corrected policy.

On or about February 21, 2008, Mr. Hodell notified Jolene Markel, Stewart's claim representative, that suit had been filed by Andrews Dixon and a *lis pendens* recorded. Mr. Hodell tendered the Bank's defense to Stewart. The Complaint alleged two causes of action: 1) specific performance the Option Agreement, and 2) declaratory relief seeking a judgment that the Bank's interest under the Deed of Trust is subordinate to Plaintiff's interest in the property. Stewart offered to pay reasonable attorney's fees for the Bank's attorney to file an answer while Stewart was investigating coverage.

768063.1

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 4

Mr. Hodell asked Stewart to authorize the filing of a motion to expunge the *lis pendens* on the grounds that the Bank had no knowledge of the Option Agreement prior to close of escrow. By e-mail dated February 21, 2008, Ms. Markel authorized counsel for the Bank to file the requested motion to expunge and agreed to pay fees not to exceed $8,400 while Stewart was continuing its investigation of the claim.

Ms. Markel requested a copy of the loan file which counsel promised to send. Ms. Markel requested to speak directly with a knowledgeable person at the Bank to determine if the Bank was aware of the option agreement prior to making the loan. On February 22, 2009, counsel for the insured forwarded copies of "the loan documents for the loan between Bank of Sacramento and R&B Land Investments, LLC." Ms. Markel reviewed these documents and found no record or entry referencing the Option Agreement. Ms. Markel requested a statement from the insured verifying that the Bank did not have knowledge of the Option Agreement at the time of close of escrow.

On March 11, 2008 Mr. Michael Chase as counsel for the Bank, wrote to Ms. Markel and made the following affirmative statement:

> "*Prior to closing, none of the four Bank of Sacramento employees who were actively involved in the loan to R&B (Kathleen Thomas, Ed Gee, Larry Straka and Greg Mellor) had actual knowledge of a contractual obligation on R&B's part to re-convey the property at issue to Andrews.* None recall reviewing any writing prior to closing, or hearing anything prior to closing, referencing a contractual obligation on R&B's part to re-convey the property at issue to Andrews. In this instance, actions speak louder than words. The Bank would never have funded a loan secured by the property, if it had any knowledge that its lien would be subordinated to an agreement to re-convey the property and thereby make the Bank' lien potentially worthless. . . ." [Emphasis added.]

Upon receipt of counsel's letter, Stewart wrote its acceptance of defense letter dated March 20, 2008, stating:

> "Based on the representations made in your letter to Stewart dated March 11, 2008, Stewart Title Guaranty company agrees to accept the tender without a reservation of rights.
>
> Please be advised that if facts come to light later during the litigation, we will advise if we need to re-assert any applicable sections of the policy. Please feel free to contact me if you have any questions regarding this matter."


**GIBBS, GIDEN, LOCHER, TURNER & SENET LLP**
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 5

     In April of 2008, Mr. Hodell sought an opinion from Stewart as to effect of the Bank proceeding with its non-judicial foreclosure of the trust deed. On April 23, 2008 counsel again stated that "none of the employees involved in the transaction on behalf of the Bank had 'actual knowledge' of the content of the option agreement." Ms. Markel confirmed that Stewart had accepted the defense without a reservation in part because her review of the loan file forwarded by counsel did not indicate the Bank had knowledge of the Option Agreement.

     Subsequent events in the litigation and information obtained by Stewart indicates that in truth, the Option Agreement was in fact in the possession of the Bank, and that the Bank and its principal employees had "actual knowledge" that the Option Agreement was an encumbrance against the property. The existence of the Bank's knowledge of this encumbrance was not communicated in writing to Stewart before close of escrow, and was concealed by the insured at the time of the tender of defense.

     Counsel for the insured proceeded to file a motion to expunge the *lis pendens*, and attached declarations by each of the involved Bank employees asserting that they had no knowledge of, had not heard about, and could not recall ever seeing or discussing the Option Agreement. Prior to the hearing, Plaintiff's filed an amended complaint. In Opposition to the motion, Plaintiffs filed declarations and deposition testimony from the Bank employees, and an appraiser hired by the Bank, in which it was apparent that in truth, the Bank had the Option Agreement in its possession, employee's were aware of it, a copy had been provided to the appraiser, and that the Option Agreement was identified in the appraisal report as an encumbrance on the property.

     The Court denied the motion to expunge the *lis pendens*, adopting its tentative ruling as the final ruling, which stated in pertinent part:

> *"Prior to close of escrow, defendant Bank had actual knowledge of the Option Agreement and memorandum thereof. Defendant Bank is not a bona fide purchaser.* A lender is not entitled to ignore information that comes to it from outside the chain of title. [citation omitted] An unrecorded instrument is valid between the parties to it and those who have notice of it. [citation omitted] Recordation is not essential to legal recognition of a property interest but only affects its priority against subsequent *bona fide purchaser,* and someone having notice of that property interest will not be a *bona fide purchaser.* [citation omitted] The first amended complaint states a real property claim (CCP 405.31) for specific performance to obtain transfer of Legal Parcel #3 to plaintiff, and plaintiff has demonstrated the probable validity of its real property claim (CCP 405.32)."

768063_1

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 6

Based upon our review of the documents, testimony and evidence submitted in connection with the motion to expunge the *lis pendens*, we conclude that Stewart was mislead by the inaccurate and incomplete information provided by the insured and its counsel. Complete copies of documents in possession of the Bank prior to close of escrow were not provided to Stewart. A full and complete disclosure would have revealed to Stewart that a copy of the Option Agreement was in fact in the possession of the Bank. In addition, counsel's affirmative representations that "*none of the four Bank of Sacramento employees who were actively involved in the loan to R&B (Kathleen Thomas, Ed Gee, Larry Straka and Greg Mellor) had actual knowledge of a contractual obligation on R&B's part to re-convey the property at issue to Andrews*" was artfully crafted to convince Stewart that no further inquiry was needed.

The true facts now indicate that a copy of the Option Agreement was known to the Bank's employees prior to closing and in fact had been transmitted to the appraiser. The appraisal prepared by John Carrothers for Smith & Associates on July 10, 2008 attached a copy of the Option Agreement in the addendum. It is also apparent that although Ms. Markel requested a copy of the loan file, she did not receive a complete copy of the file and all related documents. In the deposition transcript of Mr. Carrothers, the appraiser testified that the Option Agreement was provided to him and considered by him in his determination of the appraised value of the property. Bank loan officer Lawrence Straka was the Bank's principal reviewer of the loan transaction. In his deposition, Mr. Straka admitted that the Option Agreement was included in documents in the possession of the Bank and which he reviewed. [Straka deposition, pg. 53, l. 1-9]. "I briefed portions of the Option Agreement in order to get a general understanding of how the options timing and funding was to occur." [Straka deposition, pg. 82, l. 4-6]. This deposition testimony of Mr. Carrothers, Mr. Straka, and of other Bank employees, was not disclosed or communicated to Stewart. Copies of the deposition transcripts were not sent. No written reports or summaries of this adverse evidence and testimony elicited during the depositions of the Bank's employees were provided to Stewart until recently.

B.    **Exclusion for Encumbrances Known to the Insured and Not Disclosed to the Company**

As stated previously, the coverage afforded under the Policy was expressly subject to certain "EXCLUSIONS FROM COVERAGE," which included an exclusion for any loss, damage, costs, attorney's fees or expenses which arise by reason of: "Defects, liens, encumbrances, adverse claims or other matters: . . . (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy." The definitions section provides in pertinent part:

768063_1

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 7

> "Knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land."

In the findings by the Court in ruling on the insured's motion to expunge the *lis pendens*, the Court concluded:

> "*Prior to close of escrow, defendant Bank had actual knowledge of the Option Agreement and memorandum thereof. Defendant Bank is not a bona fide purchaser.*"

This finding was based upon evidence and testimony that the insured withheld from Stewart, and indicates that the exclusion under the Policy applies to preclude coverage. Whether or not the Bank's employees believed that provisions in the agreement to re-convey the property would be binding upon the Bank, the fact remains that the Bank knew about the Option Agreement and did not disclose this to Stewart before the policy was issued. The failure to disclose this information deprived Stewart of the opportunity to make an informed decision as to whether it would be willing to accept the risk of loss issuing a policy of title insurance to the Bank.

Stewart did not have possession of the Option Agreement at any time prior to issuance of the Policy. Nor did Stewart's agent Placer Title have possession of the Option Agreement prior to issuing the Policy. Nothing in the Memorandum disclosed that an Option Agreement burdened the land that was the subject of the requested insurance. The legal description attached to the Memorandum described separate property. Stewart had no role in preparing the Memorandum of Option or attaching the legal description to the instrument.

C.  **Waiver and Estoppel Do Not Apply**

We disagree with the contention that Stewart waived and is *estopped* to dispute coverage by virtue of its initial agreement to defend without reservation. That agreement was clearly made in reliance upon documents provided by the insured and upon the affirmative representations of the insured asserting that there was no evidence supporting "actual knowledge" of the Option Agreement by the Bank. Stewart's letter of March 28, 2008 clearly reserved the right to raise coverage defenses if the information and representations of the insured proved inaccurate or false:

> "Please be advised that if facts come to light later during the litigation, we will advise if we need to re-assert any applicable sections of the policy."

**GIBBS, GIDEN, LOCHER, TURNER & SENET LLP**
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 8

The California Supreme Court in *Waller v. Truck Ins. Exchange, Inc.* (1995) addressed the issue of the waiver doctrine in the insurance context and ended any debate over the effect of an insurer's failure to assert a defense in coverage letters. The Court rejected the insured's contention that the insurer waived its right to rely on the absence of coverage for economic losses when it failed to assert that defense in it denial of coverage letter. Waiver occurs only "when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." The insured has the burden of proving waiver and estoppel. *Insurance Co. of the West v. Haralambos Beverage Co.*, (1987) 195 C.A.3d 1308, 1320 [disapproved on other ground in *Buss v. Superior Court*].

In the context of cases were the insurer defends without reservation, waiver and estoppel can only apply when the insurer defends "with knowledge of a ground of forfeiture or non-coverage under the policy." *Miller v. Elite Ins. Co.* (1980) 100 C.A. 3d 739, 755. Where the insured has affirmatively represented facts that indicate coverage defenses do not apply, or withheld information, the insurer may rely upon these representations and is not obligated to assume that the insured or its counsel is dishonest or has concealed information. The insurer's undertaking of the insured's defense does not waive coverage defenses of which the insurer was then unaware because there is no intentional relinquishment of a known right:

> "It is insufficient for (the insured) to rely on the fact (the insurer) participated in its defense for approximately two years before formally reserving their rights to assert defenses to coverage ... (T)here is no evidence respondents ever made any intentional relinquishment of their coverage defenses at any point, despite initially accepting (the insured's) tender of defense and funding that defense for two years." *Ringler Assocs. Inc. v. Maryland Cas. Co.* (2000) 80 C.A.4th 1165, 1189 (emphasis in original; parentheses added).

**D.     Application of Civil Code § 2860**

Stewart reserves its right to deny any duty to indemnify the Bank based upon the above-referenced policy exclusions, statutes and authorities. Stewart reserves any right it may have or which hereafter may arise under the appropriate circumstances, and subject to the policy and any other applicable legal principle, to do any of the following:

(1)     To continue to investigate this matter;

(2)     To assert any defense which may become apparent hereafter, including defenses based upon known facts, the legal significance of which is not correctly appreciated by Stewart at this time;

768063_1

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 9

    (3)    To withdraw from the defense of this action;

    (4)    To refuse to indemnify the insured;

    (5)    To dispute any obligation under any stipulated judgment or settlement agreement not consented to by Stewart or which results from collusion or fraud;

Please be advised that Stewart is filing a declaratory relief action to seek a judicial determination of the extent of Stewart's obligations to its insured.

The reservation of rights creates a potential conflict under California Civil Code 2860. The Bank may select independent counsel of its own choosing to defend it against the actions filed by Plaintiffs. Civil Code § 2860 will govern the qualifications, reporting requirements, and fee rates chargeable to Stewart. Code §2860(c) limits an insurer's obligation to pay attorneys' fees to an independent counsel selected by the insured, to the rates which are actually paid by the insurer to the attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. Stewart's hourly rate paid on similar cases is not more than $250 per hour for senior partners, not more than $220 per hour for litigation associates, and $120 to $100 per hour for paralegals and law clerks, depending upon experience.

Civil Code §2860 also requires that independent counsel selected by the insured have at least five years civil litigation practice, which includes substantial defense experience in the subject at issue in the litigation and errors and omission coverage. Stewart will require identification of each attorney in the firm who will be providing services in this case and a written statement whether such attorney possesses the qualifications mandated by Civil Code §2860(c). Absent Stewart's prior written approval, Stewart will not pay for work done by anyone in the selected firm who is not qualified under Civil Code §860(c).

Stewart does not pay for charges for overhead or normal firm costs such as clerical services, filing, word processing, overtime clerical services, administrative charges, costs of maintaining automated or computer-generated systems, and items of this nature. Stewart further requires counsel retained to represent its insured to minimize costs by avoiding overstaffing in connection with meetings and utilizing legal assistants in connection with discovery and other appropriate projects. Stewart does not reimburse the services of two attorneys performing the same task, such as depositions or attendance at court proceedings.

768063_1

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 10

     Counsel's letter of February 27, 2009 asks various questions concerning Stewart's intentions as to the handling of the case. Given the rights reserved herein, Stewart does not assert the right to control the defense or the course of the litigation. Stewart is in no position to advise the insured of the likelihood of success in the litigation. To the extent the insured wishes to file a cross complaint against the escrow holder, that is a decision to be made by the Bank. Stewart reserves its right to dispute any obligation to pay for or reimburse attorney's fees and costs incurred in connection with the prosecution of a cross-complaint against any third party.

     Defense counsel for the Bank is requested to forward to the undersigned, Michael B. Geibel, all of the invoices for attorneys' fees and costs incurred by the Bank after the date of this letter and all future invoices. All invoices must refer to Stewart's claim number S023-0079164-08. Stewart requires monthly, itemized statements describing each item of work performed, the person doing the work, and the time spent on each item of work performed. The insured must approve payment of each billing statement before it is forwarded to Stewart for payment. If a bill is received which does not expressly indicate the insured's prior approval, we will accept the forwarding of the bill as a representation to Stewart that the insured has, in fact, approved payment of the bill. Payment of any billing statement does not constitute an admission by Stewart of the reasonableness of the charges contained therein. Payment of any billing statement does not constitute a waiver of Stewart's right to contest the reasonableness of the statements, in whole or in part, or, if it is determined that no duty to defend exists, to seek reimbursement of payments pursuant to *Buss v. Sup.Ct. (Transamerica Ins. Co.)*, supra, 16 Cal.4th at 51.

     Please also be mindful that Stewart's agreement to reimburse for the reasonable costs and fees of independent counsel in the defense of the insured, is not an agreement to pay fees or costs relating to coverage issues. Stewart denies any obligation to pay or reimburse for any costs or services incurred in connection with disputing or litigating this reservation of rights and coverage disputes arising under the Policy and the litigation.

     Stewart will continue to monitor the litigation. Please forward to the undersigned all pleadings, orders, discovery materials including depositions, requests for admissions, interrogatories, and responses thereto, all documents produced by any party in discovery, etc., all significant correspondence between the litigation counsel and other parties in the litigation, and all non-privileged communications. Stewart also requires that independent counsel for the insured keep Steward advised of developments in the litigation regarding trial and settlement. In this regard, counsel should be guided by Civil Code §2860(d) which states:

> "When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes

768061.1

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
A LIMITED LIABILITY LAW PARTNERSHIP

Boutin Gibson Giusto Hodell, Inc.
Attention: Michael E. Chase, Esq.
March 16, 2009
Page 11

and timely to inform and consult with the insurer on all materials relating to the action . . . Any information disclosed by the insured or by independent counsel is not a waiver of the privilege to any other party."

We anticipate that as soon as independent counsel is designated by the insured, that Mr. Bardellini's firm will substitute out, and the Bank's counsel will be the sole attorneys of record for the Bank. We request that the firms cooperate in this transition.

Within 30 days of this letter, please direct independent counsel to provide to Stewart a litigation budget, a written analysis and evaluation of the case, and a proposed litigation plan.

If you or the insured has any additional information or legal authorities that you wish Stewart to consider, we encourage you to forward such information to the undersigned.

If you believe this claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance. The Department of Insurance can be reached at:

State of California
Department of Insurance
Consumer Services Division
300 South Spring Street, Suite 201
Los Angeles, CA 90013
(800) 927-HELP/213-897-8921

Please feel free to contact me to discuss this letter or any other aspect of the case.

Sincerely,

*[signature]*

Michael B. Geibel
of GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

MBG:lrl

768063_1