1 | Samuel R. Miller (SBN 066871)
Nicole M. Ryan (SBN 175980)
2 | Cecilia Y. Chan (SBN 240971)
srmiller@sidley.com
3 | nicole.ryan@sidley.com
cecilia.chan@sidley.com
4 | SIDLEY AUSTIN LLP
555 California Street
5 | San Francisco, California  94104
Telephone:   (415) 772-1200
6 | Facsimile:    (415) 772-7400

7 | Attorneys for Defendant
STEWART TITLE GUARANTY COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| BANK OF SACRAMENTO,<br>a California Corporation,<br><br>                              Plaintiff,<br><br>     vs.<br><br>STEWART TITLE GUARANTY COMPANY,<br>a Texas Corporation,<br><br>                              Defendant. | No. 2:09-cv-00771 JAM KJM<br><br>**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date:         June 16, 2010<br>Time:         9:30 a.m.<br>Location:    Courtroom 6<br>Trial Date:  None Set<br><br>The Honorable John A. Mendez |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...............................................................................................................1

II. ARGUMENT......................................................................................................................2

    A. The SAC Fails to State a Claim Because There Is No Adverse Final Judicial Determination of the Bank's Title.............................................................2

    B. The Bank Has Failed to Allege a Recoverable Loss as a Matter of Law. ...............6

        1. The Bank's Bad Faith Allegations Do Not Allege a Withholding of Benefits or Damages. ...................................................................................6

        2. The *Lis Pendens* Itself Cannot Be the Basis of a Recoverable Claim............................................................................................................7

        3. The Bank's New Theory of Damages – That It Gave Up Consideration to Clear Title – Should Be Rejected. ...................................8

        4. The Alleged Decline in the Market Value of the Property Is Not a Recoverable Loss as a Matter of Law..........................................................9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Int'l Underwriters Ins. Co. v. Am. Guar. & Liab. Ins. Co.*,
   181 Cal App. 4th 616 (2010) ....................................................................................................3

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ..............................................................................................................2

*Atlas Assurance Co. v. McCombs Corp.*,
   146 Cal. App. 3d 135 (1983) .................................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................................2

*Clemco Indus. v. Commercial Union Ins. Co.*,
   665 F. Supp. 816 (N.D. Cal. 1987) ...........................................................................................5

*Cocoa Props., Inc. v. Commonwealth Land Title Ins. Co.*,
   590 So. 2d 989 (Fla. Dist. Ct. App. 1991) .....................................................................5, 9, 10

*First Fed. Sav. Bank of Brunswick v. Stewart Title Guar. Co.*,
   451 S.E.2d 916 (S.C. Ct. App. 1995) .....................................................................................3, 5

*Guerrero v. RJM Acquisitions LLC*,
   499 F.3d 926 (9th Cir. 2009) ....................................................................................................9

*Hatch v. First Am. Title Ins. Co.*,
   895 F. Supp. 10 (D. Mass 1995) ............................................................................................5, 9

*Karl v. Commonwealth Land Title Ins. Co.*,
   20 Cal. App. 4th 972 (1993) ........................................................................................3, 5, 6, 8

*Lawyers Title Ins. Co. v. Synergism One Corp.*,
   572 So. 2d 517 (Fla. Dist. Ct. App. 1990) ........................................................................3, 4, 5

*Nebo, Inc. v. Transamerica Title Ins. Co.*,
   21 Cal. App. 3d 222 (1971) ......................................................................................................4

*Nordberg v. Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ....................................................................................8

*Provencio v. Vasquez*,
   258 F.R.D. 626 (E.D. Cal. 2009) ..............................................................................................8

*RTC Mortgage Trust 1991 N-1 v. Fidelity Nat'l Title Ins. Co.*,
   58 F. Supp. 2d 503 (D.N.J. 1999) .........................................................................................3, 5

*Safeco Ins. Co. of Am. v. J & D Painting*,
 17 Cal. App. 4th 1199 (1993) ..........................................................................................10

*Safeco Title Ins. Co. v. Moskopoulos*,
 116 Cal. App. 3d 658 (1981) ......................................................................................7, 10

*Swierkiewicz v. Sorema N.A.*,
 534 U.S. 506 (2002)............................................................................................................2

**OTHER AUTHORITIES**

448 PLI/Real Property 677, *The Title Insurer's Obligation to Pay Indemnity: When Does the Insured's Right to Damages Accrue?* (1999)......................................................................10

Alice L. Akawi, et al., *California Title Insurance Practice* § 6.44 (CEB 2d ed. 2009 update).................................................................................................................................7

I. INTRODUCTION

Stewart Title Guaranty Company's ("STG") motion to dismiss should be granted because of two independent fundamental flaws in the Bank's Second Amended Complaint ("SAC"). First, the Bank alleges no withholding of benefits and no recoverable damages. As a matter of law, it has suffered no compensable loss caused by an insured-against title defect. Second, the Bank cannot recover against STG as a matter of law due to the express limitation on liability set forth in Section 8(b) of the Policy's Conditions and Stipulations: that there can be no liability unless the underlying litigation is resolved adversely to the insured's title. The SAC fails to state a claim against STG for *each* of these reasons.

The Bank tries to avoid dismissal of the SAC by asserting a new theory of liability: that it suffered damages when it was "forced" to give a mutual release in the settlement. But, such a theory is not pled in the SAC, and it would not state a claim in any event. Moreover, the Bank mischaracterizes and misconstrues STG's arguments. Contrary to the Bank's suggestion, STG's motion is not premised on the argument that the underlying Andrews Dixon Action did not include "covered" claims; rather, even if the Andrews Dixon Action *did* include covered claims, the Bank has suffered no damages as a matter of law. The Bank's Opposition also raises straw man arguments irrelevant to STG's motion, asserting that the Bank has pled conduct that constitutes bad faith and that it has pled that STG did not act with "reasonable diligence." STG vigorously disputes these assertions, but they are not pertinent to STG's motion to dismiss.

The allegations in the SAC and materials properly subject to judicial notice establish that:

- STG promptly accepted the defense of the underlying Andrews Dixon Action and paid for all attorneys' fees to defend the Bank. This fully satisfied STG's obligations pursuant to Section 4(a) of the Policy to "provide for the defense of an insured" "at its own cost and without unreasonable delay." SAC Exh. A (Policy, at 3 (Conds. & Stips. §4(a)).

- In less than two years, the underlying action against the Bank was dismissed with prejudice, the *lis pendens* was removed, and the Memorandum of Option and Option Agreement upon which

1

    plaintiff in the Andrews Dixon Action asserted priority over the Bank's interest in the property were "terminated" and "are of no further force and effect."  RJN Exhs. F, G.[1]

- Thus, STG, by funding the settlement, put the Bank in exactly the position the Bank claimed it should be in – with the Bank's Deed of Trust in first position, free of any claim of subordination or entitlement by Andrews Dixon.  *See* RJN Exh. F (Settlement Agreement) ¶¶ 1, 3(a).

- The Bank's own selected counsel, the Boutin firm, represented the Bank during the negotiation of the Settlement Agreement, and neither the Bank nor the Boutin firm objected to the release provisions of the Settlement Agreement or sought to assert the counterclaims against Andrews Dixon they now suggest they were "forced" to give up.  *See* RJN Exh. F ¶¶ 9-10.

Accordingly, as a matter of law, STG complied with all obligations under the Policy, and the Bank suffered no cognizable damages.

## II.   ARGUMENT

### A.   The SAC Fails to State a Claim Because There Is No Adverse Final Judicial Determination of the Bank's Title.

Without citing to any authority, the Bank asserts that there are two pre-conditions that STG must meet before invoking the limitation of liability provision set forth in Section 8(b):  (1) it must use reasonable diligence to clear the defect in the title; and (2) it must itself pay the full consideration used to clear the title, which the Bank asserts STG did not do.  Opp. at 2.  For the reasons discussed below, the Bank's argument fails.[2]

---

[1] STG's Request for Judicial Notice is unopposed by the Bank.

[2] The Bank also misstates the motion to dismiss standard.  It argues that a motion to dismiss is granted only in "extraordinary" cases and asserts that this Court may grant a motion to dismiss "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Opp. at 8 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).  The Bank is wrong.  In *Twombly*, the Supreme Court expressly abrogated the Bank's articulation of the motion to dismiss standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009).  "[A] formulaic recitation of the elements of a cause of action will not do."  *Twombly*, at 555.  There must be "enough facts to state a claim to relief that is plausible on its face."  *Id. at* 570.  For the reasons discussed herein, the SAC fails to meet this standard.

2
DEFENDANT'S REPLY MP&A ISO MOTION TO DISMISS
CASE NO. 2:09-cv-00771 JAM KJM

As STG points out in its opening brief, Section 8(b) of the Policy provides that, in the event of litigation, the insurer shall have no liability until there has been a final determination by a court adverse to the Bank's lien. Policy, at 4 (Conds. & Stips. § 8(b)); Mem. at 14-15.[3] This notwithstanding, the Bank strains to read this provision together with Section 8(a) to *create* liability against STG, arguing that the "reasonable diligence" language of Section 8(a) should be read into Section 8(b) because ambiguities should be construed in favor of the insured. Opp. at 14-22. But under general contract interpretation principles, where, as here, the contractual language is clear and unambiguous, the rule of construction in favor of the insured does not apply, and the Court determines coverage by applying the plain meaning of the unambiguous provisions of the policy. *American Int'l Underwriters Ins. Co. v. Am. Guar. & Liab. Ins. Co.*, 181 Cal App. 4th 616, 629 (2010); *Karl v. Commonwealth Land Title Ins. Co.*, 20 Cal. App. 4th 972, 981 (1993) ("Strained interpretation [of a title insurance policy] may not be used to create ambiguity."). Accordingly, this provision should be interpreted to mean just what it says: "*Limitation* of Liability" – that it limits STG's liability, not expands it. Not surprisingly, numerous courts agree with this interpretation and have rejected the Bank's argument that the two provisions in Section 8 should be read together to impose a reasonable diligence requirement into Section 8(b). *See* Mem. at 15-16 (discussing *Lawyers Title Ins. Co. v. Synergism One Corp.*, 572 So. 2d 517 (Fla. Dist. Ct. App. 1990); *First Fed. Sav. Bank of Brunswick v. Stewart Title Guar. Co.*, 451 S.E.2d 916, 920 (S.C. Ct. App. 1995); and *RTC Mortgage Trust 1991 N-1 v. Fidelity Nat'l Title Ins. Co.*, 58 F. Supp. 2d 503 (D.N.J. 1999)).[4]

---

[3] STG separately has an obligation to "provide for the defense of an insured" "at its own cost and without unreasonable delay." Policy, at 3 (Conds. and Stips. §4(a)). There is no dispute that STG satisfied this separate obligation by immediately and continuously paying for the Bank's defense costs.

[4] As the court in *RTC Mortgage Trust 1994 N-1* explained, to construe these two provisions in the manner suggested by the Bank would require STG, in the event of litigation against its insured, to obtain a swift final judgment or be forced to settle and compensate the insured, or purchase the outstanding cloud on title, which "would be a patently unreasonable" construction of the Policy. 58 F. Supp. 2d at 533. This would be true even if the litigation concerning title is wholly without merit.

3
DEFENDANT'S REPLY MP&A ISO MOTION TO DISMISS
CASE NO. 2:09-cv-00771 JAM KJM

1       The Bank relies on *Nebo, Inc. v. Transamerica Title Insurance Co.*, 21 Cal. App. 3d 222
2  (1971) for the proposition that STG must prove that it acted in a reasonably diligent manner
3  under Section 8(a) in order for Section 8(b) to apply. Opp. at 15. But *Nebo* does not involve a
4  lender's policy, and *Nebo* does not say that. In *Nebo*, the insured land owner sued its title
5  insurer, under an owner's title insurance policy with different policy language, after having
6  purchased four lots where it was found that superior title was vested in another person and, as a
7  result, rents from those properties were paid to the other title holder until title was cleared. 21
8  Cal. App. 3d at 223. After the insurer lost a different case that decided identical title issues as
9  the insured in *Nebo*, the insurer delivered clear title to the insured by purchasing the lots in
10 question; no litigation was ever brought with respect to those lots. *Id.* at 226. The court upheld
11 the trial court's holding that the time to clear title – three years and four months after notice –
12 was not reasonable under the particular facts of that case. *Id.* at 228.

13      *Nebo* is inapplicable here for several significant reasons. First, the *Nebo* court did *not*
14 address the interplay between provisions like Section 8(a) and Section 8(b). There was no
15 underlying litigation in that case, and thus the court had no occasion to address whether the
16 "reasonable time" requirement applies to a provision like Section 8(b) that specifically addresses
17 claims for loss where litigation against the insured is pursued, and which *limits* such claims to
18 situations where the court makes a final ruling adverse to the title as insured. By contrast, the
19 cases discussed in STG's opening brief, and this case, directly address that situation. In *Nebo*,
20 the court found that the insurer did *not* clear title through litigation. *Id.* at 228. Here, in contrast,
21 the insurer cleared title through litigation. The Bank's argument that this case was resolved by
22 settlement, not by "litigation," is incorrect. Opp. at 17. Andrews Dixon sued the Bank, whereas,
23 in *Nebo*, there was never any litigation brought against the insured. *Nebo*, 21 Cal. App. 3d at
24 228; *see also Lawyers Title Ins. Co.*, 572 So. 2d at 518 (holding that once litigation has
25 commenced, "[t]he insured's claim must await an adverse title determination by the court").
26 That is the relevant distinction. Moreover, in *Nebo*, the right to recover a decline in the market
27 value of the property was not at issue. Finally, *Nebo* involved an owner's policy, not a lender's
28 policy, and California courts have held that liability for loss is more *limited* in cases involving

4
DEFENDANT'S REPLY MP&A ISO MOTION TO DISMISS
CASE NO. 2:09-cv-00771 JAM KJM

1  lender's policies, even where the policy language is comparable.  *See, e.g., Karl*, 20 Cal. App.
2  4th at 979 n.2 (noting that the difference in coverage results from the difference in the insurable
3  interests held by a lender as opposed to an owner).

4  Similarly, *Hatch v. First American Title Insurance Company*, 895 F. Supp. 10 (D. Mass
5  1995) does not help the Bank.  In *Hatch*, the court declined to grant the insurer's motion for
6  summary judgment on the issue of whether curing title in *six years* was within a reasonable time.
7  *Id.* at 13.  But, importantly, *Hatch* is a Massachusetts case interpreting an insurance contract
8  under Massachusetts law.  *See id.*  As another court in this circuit concluded in a choice of law
9  analysis, there is a conflict between California and Massachusetts insurance contract
10 interpretation law.  *Clemco Indus. v. Commercial Union Ins. Co.*, 665 F. Supp. 816, 818 (N.D.
11 Cal. 1987).  Thus, the California Supreme Court likely would reject the Massachusetts court's
12 interpretation and, instead, adopt the reasoning of the other persuasive decisions cited by STG in
13 its opening brief.

14 This court should similarly reject the holding in the Bank's remaining case, *Cocoa
15 Properties, Inc. v. Commonwealth Land Title Insurance Company*, 590 So. 2d 989 (Fla. Dist. Ct.
16 App. 1991).  As the Bank's own case, *Hatch*, observes, the *Cocoa* court's holding is internally
17 contradictory.  *Hatch*, 895 F. Supp. at 13.

18 Lastly, the Bank's argument that Section 8(b)'s limitation on liability does not apply
19 because the cases cited by STG are limited to situations where the insurer obtained a favorable
20 court ruling clearing title is incorrect.  Opp. at 21-22.  Those cases do *not* hold or even suggest
21 that that is a requirement.  *See Lawyers Title Ins. Co.*, 572 So. 2d at 518; *First Fed. Sav. Bank of
22 Brunswick*, 451 S.E. 2d at 921; *RTC Mortgage Trust*, 58 F. Supp. 2d at 533.  To the contrary, as
23 the court in *First Federal Savings Bank of Brunswick* unequivocally declared, "once Stewart
24 Title elected, pursuant to the limitations contained [in Paragraph 8(b)], to litigate," "there can be
25 no claim or loss *until there is an adverse title determination by a court*."  451 S.E. 2d at 921
26 (emphasis added).  Thus, the relevant inquiry is whether there was a final adverse title
27
28

5
DEFENDANT'S REPLY MP&A ISO MOTION TO DISMISS
CASE NO. 2:09-cv-00771 JAM KJM

1 determination, not whether there was a favorable title determination.  Here, it is undisputed that there was *not* a final adverse title determination.[5]

### B. The Bank Has Failed to Allege a Recoverable Loss as a Matter of Law.

As set forth in STG's opening brief, even if the "reasonable diligence" standard did apply, the Bank's claims still fail because the Bank alleges no withholding of benefits or damages as a result of STG's alleged actions in connection with the Andrews Dixon Action or otherwise.  *See* Mem. at 9-13, 18-20.  "The law clearly states that a title insurance policy is a contract of indemnity, not one of guarantee."  *Karl*, 20 Cal. App. 4th at 978.  Absent a "loss," there is no obligation to pay benefits under a title policy, and a "secured lender suffers an indemnifiable 'loss' under a title policy *only if* the lender fails to recoup the debt *because of the insured-against senior lien.*"  *Id.* at 978-79 (emphasis added).

#### 1. The Bank's Bad Faith Allegations Do Not Allege a Withholding of Benefits or Damages.

The Bank's Opposition unsuccessfully tries to side-step its failure to allege a compensable loss by asserting various ways in which it contends STG acted in bad faith.  The Bank complains about STG's filing of a declaratory relief action.  However, as  a matter of law, "the mere filing of an action to declare the insurer's rights and duties relative to an insurance policy cannot form the basis of breach of the duty of good faith and fair dealing."  *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 150 (1983).  But even if it could, the Bank's claim still fails because the Bank alleges *no damages* as a result of the filing of the declaratory relief action (not surprisingly, given that the Bank filed a declaratory relief action first and given that STG reimbursed all fees incurred by the Bank in connection with the

---

[5] The Bank's further apparent argument that Section 8(b)'s limitation on liability does not apply where the insured "pays" part of the consideration for the settlement by agreeing to a mutual release, Opp. at 2, is *not* supported by the language of Section 8(b).  It also fails for the reasons set forth below in Section II.B.3.

1  declaratory relief actions).[6]  The Bank also complains about STG's changes with respect to its
2  position on defense under a "reservation of rights."  Again, however, no damage is alleged.
3  Further, under *Atlas*, an insurer's "vacillations" with respect to its position on defense or
4  coverage are not evidence of bad faith where, as here, the insurer paid the attorneys' fees in
5  defending the third-party action.  *Id.* at 150.  Finally, the Bank's accusations regarding the
6  "alteration of the policy" (although denied by STG) are irrelevant to the legal issues presented by
7  this motion, as they again caused no loss to the Bank.

## 2. The *Lis Pendens* Itself Cannot Be the Basis of a Recoverable Claim.

The Policy is clear that it does *not* cover any "[d]efects, liens, encumbrances, adverse claims, or other matters . . . *created subsequent to Date of Policy*."  Policy, at 2 (Excl. 3(d)) (emphasis added).  It is undisputed that the *lis pendens* was filed *nearly two years after* the Date of the Policy.  Thus, the Bank's repeated attempts to try to characterize the *lis pendens* (*i.e.,* the filing of the Andrews Dixon Action) as the relevant policy defect – and to seek damages based on that claimed defect – are unavailing.

The Bank attempts to distinguish *Safeco Title Ins. Co. v. Moskopoulos*, 116 Cal. App. 3d 658 (1981), on the ground that, in that case, there was never an attack on the title to the property.  Opp. at 10.  But that is irrelevant to the court's holding.  *Safeco* expressly holds that a *lis pendens* recorded *after* the effective date of the policy is outside policy coverage.  *Id.* at 666.  Similarly, *California Title Insurance Practice* explains that "Exclusion 3(d) of the CLTA policy . . . reinforces the restriction on the face page that the title policy is limited to the date of the policy and does not cover matters attaching or created after the date of the policy."  Alice L. Akawi, et al., *California Title Insurance Practice* § 6.44 (CEB 2d ed. 2009 update).  Thus, "*A lis pendens recorded after the date of the policy is not covered by the policy.*"  *Id.* (emphasis added).

The alleged title defect at issue is the unrecorded *Option Agreement*, which Andrews Dixon asserted had priority over the Bank's Deed of Trust.  To the extent that the Bank suggests

---

[6] The Bank does not dispute STG's argument that a withholding of benefits and damages must be alleged in order to state a claim for bad faith or breach of contract.  *See* Mem. at 10-12.

7
DEFENDANT'S REPLY MP&A ISO MOTION TO DISMISS
CASE NO. 2:09-cv-00771 JAM KJM

1   that STG's motion to dismiss argues that there is no coverage under the Policy for the purported

2   defects due to the Option Agreement, the Bank is mistaken.  Opp. at 10-11.  To the contrary,

3   STG immediately and continuously paid the Bank's defense costs to defend against this alleged

4   defect as soon as it was asserted by Andrews Dixon.  The Bank disputed that the Option

5   Agreement had priority over its Deed of Trust.  However, in light of the adverse claim, STG

6   defended the claim and ultimately paid $2.1 million to settle the claim, clearing the alleged cloud

7   on the Bank's title and putting the Bank in exactly the position it would have been had there been

8   no alleged title defect from the beginning.  Thus, as a matter of law, *the Bank suffered no loss*

9   *under the Policy as a result of an insured-against title defect*.  Mem. at 18-19; *Karl*, 20 Cal. App.

10  4th at 978; Policy, at 1, 4 (Conds. & Stips. § 7).

11  **3.    The Bank's New Theory of Damages – That It Gave Up Consideration
12        to Clear Title – Should Be Rejected.**

13       In a desperate attempt to salvage its third attempt to state a claim against STG, the Bank

14  resorts to creating a new theory of damages in its Opposition.  The Bank now asserts, for the first

15  time, that STG did not cure the title defect because the Bank contributed "consideration" to clear

16  title when it was "forced" to provide a mutual release to Andrews Dixon as part of the

17  settlement.  Opp. at 3, 13-14, 18.  The Bank's new theory of damages should be rejected.

18       First, the Bank cannot rely on new theories not set forth in the SAC to defeat a motion to

19  dismiss.  *Provencio v. Vasquez*, 258 F.R.D. 626, 639 (E.D. Cal. 2009) ("Raising a completely

20  new theory of liability, with only attenuated connection to the complaint, in a brief in opposition

21  to a motion to dismiss does not grant Defendant fair notice of Plaintiffs' claim or grounds upon

22  which it rests."); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1090 (N.D. Cal. 2006).

23  Here, nowhere in the SAC does the Bank allege that it was "forced" to give up claims against

24  Andrews Dixon much less that it was thereby damaged.  Opp. at 3.  Nor does the SAC allege that

25  the mutual release which the Bank itself *expressly agreed to* is the basis for its claims.  *See, e.g.,*

26

27

28

8
DEFENDANT'S REPLY MP&A ISO MOTION TO DISMISS
CASE NO. 2:09-cv-00771 JAM KJM

1  SAC ¶ 33.  Thus, the Bank's new assertions should be rejected.[7]

2  Furthermore, accepting the Bank's position would turn the "strong judicial policy that
3  favors settlements" on its head.  *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 939 (9th Cir.
4  2009).  Settlement agreements typically include a mutual release of claims.  Accepting the
5  Bank's argument here would mean that even after an insurer defends a lawsuit against its insured
6  and pays to settle the claim, the insured could subsequently turn around and sue the insurer,
7  arguing that it had given up valuable consideration in the settlement by way of the mutual
8  release.  This preposterous rule would encourage, and perhaps even mandate, insurers to fight
9  tooth and nail to the bitter end of every litigation.  This is not the law.

### 4. The Alleged Decline in the Market Value of the Property Is Not a Recoverable Loss as a Matter of Law.

12  The Bank's Opposition barely addresses STG's argument that the alleged decline in the
13  market value of the Property during the pendency of the Andrews Dixon Action is not a
14  recoverable loss under California law.  Mem. at 18-19.  In its Opposition, the Bank cites only to
15  two non-California cases – *Hatch* and *Cocoa Properties* – and argues that those courts allowed
16  the insured to pursue claims based on diminution in value of the property.  Opp. at 23-24.  But
17  those courts did not hold that.  To the contrary, the issue of whether diminution in property value
18  is a recoverable loss was not raised in those cases.  *See Hatch*, 895 F. Supp. at 12; *Cocoa*
19  *Properties*, 590 So. 2d at 991.  For example, the *Cocoa Properties* court simply remanded the
20  case on the issue of whether the insurer acted within a reasonable time, not whether the insured

---

[7] Even if the Bank had made such allegations in the SAC, they would fail.  As an initial matter, the Bank never asserted counterclaims against Andrews Dixon (even during the nine months its chosen counsel, the Boutin firm, had control of the litigation), and the Bank was represented by its own counsel, the Boutin firm, in the settlement negotiations when it *voluntarily* agreed to the mutual release.  In fact, the Bank made an affirmative representation in the Settlement Agreement that it was represented by its own counsel and had had the opportunity to confer with its counsel regarding the agreement.  RJN Exh. F ¶ 9.  Contrary to the Bank's conclusory assertion, it was not "forced" to agree to anything.  Moreover, the Bank's new assertions *do not allege a compensable loss under the Policy as a result of an insured-against title defect*.  Thus, they would not cure the deficiencies in the Bank's claims in any event.

9
DEFENDANT'S REPLY MP&A ISO MOTION TO DISMISS
CASE NO. 2:09-cv-00771 JAM KJM

could pursue recovery of lost profits resulting from the market drop as the Bank suggests. *Cocoa Properties*, 590 So. 2d at 991. The Bank's reliance on those cases is, therefore, misplaced.

Moreover, the Bank effectively ignores the controlling *California* law cited by STG. *See* Mem. at 18-20. As STG noted in its opening brief, and as the Bank does not dispute, "No published California authority supports an argument that an insured should be compensated for diminution in value caused by market decline." Wendy J. Watanabe, 448 PLI/Real Property 677, *The Title Insurer's Obligation to Pay Indemnity: When Does the Insured's Right to Damages Accrue?* (1999). Contrary to the Bank's argument that *Safeco Insurance Company of America v. J & D Painting*, 17 Cal. App. 4th 1199, 1204 (1993) is distinguishable, *Safeco* held that the diminution in the market value of the plaintiff's property and his inability to sell the property during the time it took to make repairs following the defendant's alleged negligence was *not* recoverable as a matter of law.[8]

In short, the Bank has suffered no compensable loss under the Policy: STG paid the Bank's defense costs and the alleged title defect was removed at no cost to the Bank, putting the Bank in the same position it would have been had there been no alleged title defect. Moreover, the specific items of damages that the Bank seeks – market decline in the value of the property, carrying costs, and prejudgment interest on such – are not recoverable as a matter of law.

DATED:  June 9, 2010                                   SIDLEY AUSTIN LLP


     /s/ Nicole M. Ryan
Nicole M. Ryan
Attorneys for Defendant
STEWART TITLE GUARANTY COMPANY

---

[8] In addition, the Bank's Opposition does not even respond to STG's argument that the Bank's claim for "carrying costs" and "lost interest and other damages" fails as a matter of law, Mem. at 20, thereby conceding the insufficiency of these items of claimed damages.

10
DEFENDANT'S REPLY MP&A ISO MOTION TO DISMISS
CASE NO. 2:09-cv-00771 JAM KJM