IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BANK OF SACRAMENTO,
a California corporation,

       Plaintiff,

          v.

STEWART TITLE GUARANTY COMPANY,
a Texas corporation

       Defendant.

_____/

Case No. 09-00771-JAM-KJN

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

    This matter comes before the Court on Defendant Stewart Title Guaranty Company's ("Defendant's") Motion to Dismiss (Doc. 54) Plaintiff Bank of Sacramento's ("Plaintiff's") Second Amended Complaint ("SAC") (Doc. 51) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff

1

opposes the motion.[1] For the reasons set forth below, Defendant's motion is granted.

FACTUAL AND PROCEDURAL BACKGROUND

The SAC alleges that in 2006 Plaintiff made a $10.8 million loan made to R&B Land Investments, LLC ("R&B"), to fund the purchase of certain real property ("the property") in Dixon, California, from Andrews Dixon LLC ("Andrews Dixon"). Plaintiff received a deed of trust on the property as security for its loan, and purchased a lender's title insurance policy, Policy No. M-2229-000825979 ("the policy") from Defendant, dated July 17, 2006. Plaintiff's title insurance policy from Defendant insured Plaintiff against loss or damage sustained by any defect in or lien or encumbrance on the title, unmarketability of the title, lack of right of access to and from the land, the invalidity or unenforceability of the lien of the insured mortgage upon the title, and the priority of any lien or encumbrance over the lien of the insured.  The policy listed specific items that were excluded from coverage. It also contained a general exclusionary clause that excluded, among other items, any defects, liens or encumbrances not known to Defendant, and not recorded, but known to Plaintiff.

---

[1] This motion was determined suitable for decision without oral argument. E.D. Cal. L. R. 230(g).

R&B subsequently defaulted on the loan. Andrews Dixon then sued Plaintiff in early 2008. The suit alleged that Andrews Dixon's interest in the property was senior to Plaintiff's interest in the property, based on an unrecorded option agreement ("the option agreement") that Andrews Dixon and R&B executed prior to the close of escrow. In February 2008, Andrews Dixon also filed a lis pendens on the property. Based on R&B's default, Plaintiff foreclosed on the property and purchased it at the Trustee's sale with a credit bid. However, because of the lis pendens, Plaintiff was unable to sell the property.

Plaintiff alleges that Defendant knew about the option agreement, and that the option agreement was mentioned in the policy. Plaintiff alleges that Defendant later fraudulently altered the policy to remove mention of the option agreement. Plaintiff tendered its defense to Defendant in the lawsuit and the accompanying lis pendens matter filed by Andrews Dixon, pursuant to the title insurance policy. Defendant agreed to represent Plaintiff with its panel counsel, and filed a motion to expunge the lis pendens in March 2008.

Though Defendant agreed to represent Plaintiff, numerous conflicts and disagreements regarding representation arose, including allegations that Defendant was improperly accessing attorney-client privileged information. A dispute arose over whether or not Plaintiff knew about the unrecorded option

agreement and whether Plaintiff had disclosed it to Defendant.
Defendant later apologized for its conduct, and continued
defending Plaintiff using its panel counsel. In August 2008, the
motion to expunge the lis pendens was denied, with the Superior
Court judge finding that Plaintiff knew about the option
agreement, and was therefore not a bona fide purchaser. In March
2009, Defendant informed Plaintiff that based on the Superior
Court's findings, Defendant believed it had a conflict and would
no longer use its panel counsel. New defense counsel was chosen
by Plaintiff, and substituted in as counsel. Defendant continued
to pay for the defense. In December 2009, a tentative settlement
agreement was reached between Plaintiff and Andrews Dixon. The
settlement was finalized and the option agreement was terminated
and lis pendens removed in January 2010. Plaintiff then owned
the title free and clear of encumbrances. Defendant paid $2.1
million to Andrews Dixon on Plaintiff's behalf to settle the
litigation.

During the two years in which litigation was ongoing and
the lis pendens was in place, Plaintiff was unable to sell the
property. In 2008, Plaintiff had received two preliminary offers
to buy the property, in the $10.8 million range. In May 2008,
the property was appraised as having a fair market value of $9
million. On November 25, 2009 the property was appraised to have
a value of $4.3 million. On February 16, 2010, Plaintiff sent a

demand letter to Defendant, demanding that Defendant pay it $8.7 million, as reimbursement for loss and damage covered under the policy. On February 27, 2010, Defendant denied the claim of loss and damage, based on the conditions and exclusions in paragraphs 4(b), 6(b), 8(a) and 8(b) of the policy.

Thus, the SAC now seeks to recover from Defendant the difference between what the property was worth in early 2008, and what it was worth in late 2009 at the end of the settlement proceedings and removal of the lis pendens.

This matter was originally filed in Sacramento Superior Court on March 17, 2009, and was removed to this Court by Defendant on March 19, 2009. On March 18, 2009 Defendant brought a motion for declaratory relief (seeking an order that it had no duty to defend or indemnify Plaintiff because Plaintiff failed to disclose the option agreement), which it later voluntarily dismissed. Plaintiff then filed a First Amended Complaint ("FAC"), which alleged that Defendant breached the policy by failing to defend it with un-conflicted counsel. Defendant brought a motion to dismiss the FAC, which was ultimately rendered moot by a stay of the proceedings pending settlement of the underlying title dispute. After the settlement, Plaintiff filed the SAC, bringing the current claims for relief.

Plaintiff seeks $6.5 million for decline in market value of the property, an additional in $300,000 in carrying costs and at

least $1.9 million in prejudgment interest, based on the allegation that Defendant's failure to swiftly resolve the title issue resulted in economic damage.

II. OPINION

A. Legal Standard

A party may move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheur v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Schere, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "Notwithstanding this deference, it is improper for a court to assume the plaintiff can prove fact which he or she has not alleged." Ozuna v. Home Capital Funding, 2009 WL 2496804, at *1 (S.D. Cal. Aug. 13, 2009). Dismissal is appropriate where the plaintiff fails to

6

state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss, a court has discretion to allow leave to amend the complaint. See Fed. R. Civ. Pro. 15(a). "Absent prejudice, or a strong showing of any [other relevant] factor[], there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original). "Dismissal with prejudice and without leave to amend is not appropriate unless . . . it is clear that the complaint could not be saved by amendment." Id.

Generally, the court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. Sherman v. Stryker Corp., 2009 WL 2241664, at *2 (C.D. Cal. Mar. 30, 2009) (internal citations omitted). There are two exceptions: when material is attached to the complaint or relied on by the complaint, or when the court takes judicial notice of matters of public record, provided the facts are not subject to reasonable dispute. Id. Here, both Plaintiff and Defendant have requested the Court take judicial notice of certain documents. Plaintiff attached a copy of the policy to the SAC, for the Court's consideration. Defendant requested judicial notice (Doc.55), of eight documents: the second amended complaint filed

by Andrews Dixon in the Superior Court of Solano County, the
Superior Court's order after the hearing on the Andrews Dixon
motion, the motion to expunge the lis pendens, the settlement
agreement, the option agreement termination, two of Defendant's
letters to Plaintiff, and one of Plaintiff's letters to
Defendant. All of the documents are matters of public record or
are relied on in the SAC. Accordingly, the Court will consider
all documents as requested.

B. <u>Claims for Relief</u>

1. Breach of Contract

Plaintiff claims that Defendant breached the terms of the
insurance policy in a number of ways, including failing to
properly handle the claim against Plaintiff with reasonable
diligence, using conflicting counsel to defend Plaintiff,
providing an inadequate defense, fraudulently altering the
policy, inappropriately gaining access to attorney-client
privileged communications, failing to use reasonable diligence
to remove the lis pendens, and filing an unmeritorious
declaratory relief action against Plaintiff. Plaintiff alleges
that it has performed all the conditions, covenants and
agreements required of it under the policy.

"To state a claim for breach of contract, a plaintiff must
allege the following essential elements: "(1) the existence of a

contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." <u>Westways World Travel v. AMR Corp.</u>, 182 F. Supp. 2d 952, 963 (C.D. Cal. 2001)(quoting <u>Reichert v. General Ins. Co. of America</u>, 68 Cal. 2d 822, 830 (1968)).

Defendant argues that the SAC fails to allege a withholding of benefits due. As Defendant notes, the SAC does not and cannot allege that Defendant failed to pay Plaintiff's defense costs in the suit by Andrews Dixon. Further, Defendant paid to settle the Andrews Dixon suit on Plaintiff's behalf. Absent a withholding of benefits due under the insurance policy, a breach of contract claim against an insurer cannot stand. See <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App. 3d 1136, 1151 n. 10 (1990).

An insurer is only obligated to indemnify an insured in a third party action where a judgment has been entered against the insured on a covered claim. See <u>Buss v. Superior Court</u>, 16 Cal. 4th 35, 45-46 (1997). Likewise, an insured is not damaged by the insurers 'wrongful' failure to settle a claim unless the insured suffers a judgment in excess of the policy limits. <u>Continental Ins. Co. v. Superior Court</u>, 37 Cal. App. 4th 69, 85 n 11 (1995). Though the SAC alleges that Defendant delayed in responding to a request to attend a meditation, and rejected an earlier proposed settlement, this conduct does not amount to a breach of contract as there has been no adverse judgment against Plaintiff and no withholding of benefits.

The SAC also alleges that Defendant breached the contract because it breached provisions 8(a) and 8(b) of the policy. Plaintiff argues that sections 8(a) and 8(b) must be read together, that section 8(a) imposes a "reasonable diligence" standard on the litigation discussed in 8(b).

Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. <u>Waller v. Truck Ins. Exchange, Inc.</u>, 11 Cal.4th 1, 18 (Cal. 1995). "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." <u>Id.</u> Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. Cal. Civ. Code, § 1636. Such intent is to be inferred, if possible, solely from the written provisions of the contract. <u>Id.</u>, § 1639. The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," controls judicial interpretation, unless "used by the parties in a technical sense or a special meaning is given to them by usage." <u>Id.</u>, § 1644. "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." <u>Waller</u>, <u>supra</u> 11 Cal.4th at p. 18. Moreover, insurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured,

[whereas] exclusionary clauses are interpreted narrowly against the insurer." <u>MacKinnon v. Track Ins. Exch.</u>, 31 Cal. 4th 635, 648 (Cal. 2003).  An exclusionary clause must be "conspicuous, plain and clear" to be enforceable.  <u>De May v. Interinsurance Exch. of the Auto. Club of S. Cal.</u>, 32 Cal. App. 4th 1133, 1137 (Cal. 1995).  As the California Supreme Court explained, "An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear . . . The burden rests on the insurer to phrase exceptions in clear and unmistakable language." <u>State Farm Mut. Auto Ins. Co. v. Jacober</u>, 10 Cal. 3d 193, 202 (Cal. 1973).

Here, the limitations on liability presented in sections 8(a) and 8(b) are not ambiguous. The Court agrees with Defendant's analysis that once litigation has begun, section 8(b) limits liability, and Defendant is only liable if an adverse judgment is issued against Plaintiff. As alleged in the SAC, there was no adverse judgment. The litigation led to a settlement, which was fully funded by Defendant and resulted in Plaintiff obtaining clear marketable title to the property. Accordingly, under section 8(b), Plaintiff cannot maintain its breach of contract claim premised on a breach of the 8(a) reasonable diligence provision.

Even if this Court were to agree that Plaintiff has properly pled a breach of contract claim, Defendant contends

that its motion to dismiss must still be granted because the
damages alleged by Plaintiff are not cognizable economic
damages. This Court agrees. "Damages are an essential element of
a breach of contract cause of action, and without them
plaintiff's cause of action cannot survive." <u>Hood v. Hartford
Life and Acc. Ins. Co.</u>, 2009 WL 453115, at *3 (E.D. Cal. Feb.
23, 2009). Plaintiff argues that it suffered damages in the form
of the decline in market value of the property. Plaintiff
contends that such damages are proper, but cites no California
case law that supports its contention that a lender's title
insurance policy insures against diminution in value of property
caused by market decline. Defendant cites California case law
that presents analogous scenarios, which this Court finds
persuasive. In both cases cited by Defendant, decline in market
value was not considered a compensable damage. <u>See Safeco Ins.
Co. of Am. v. J&D Painting</u>, 17 Cal. App. 4th 1199, 1204 (1993)
(rejecting insured's claim against painting company for damages
based on the diminution in the market value of his property and
his inability to sell the property during the time it took to
make repairs on the house following the painting company's
alleged negligence, because such damages are not proximately
caused by the alleged negligence); <u>Lick Mill Creek Apartment v.
Chi. Title Ins. Co.</u>, 231, Cal. App. 3d 1654 ,1661-62 (1991)
(finding that defects which impair the market value of the

property rather than the marketability of the title to the land do not constitute a compensable loss under a title insurance policy.)

Lastly, Plaintiff in its opposition brief raised a new theory not alleged in the SAC: that it suffered damages as a result of the settlement, because it was "forced" to give up valuable counterclaims against Andrews Dixon. As an initial matter, the Court will not consider this new theory, as it was not raised in the SAC. "Raising a completely new theory of liability, with only attenuated connection to the complaint, in a brief in opposition to a motion to dismiss does not grant Defendant fair notice of Plaintiffs' claim or grounds upon which is rests." <u>Provencio v .Vasquez</u>, 258 F.R.D. 626, 639 (E.D. Cal. 2009). Second, these new allegations do not serve as a basis for allowing further amendment of the SAC. The SAC alleges that Plaintiff was represented by counsel of its own choosing at the settlement proceedings and in the nine months proceeding settlement, that Plaintiff never asserted counterclaims, that plaintiff had the opportunity to confer with counsel regarding the settlement terms, and that it to voluntarily agreed to mutual release of claims.

Given that Plaintiff has not alleged a claim for breach of contract and Plaintiff has thus far amended this claim twice, this Court finds that further amendment would be futile.

Accordingly, Defendant's motion to dismiss this claim is GRANTED WITH PREJUDICE.

    2. <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

    Plaintiff alleges that Defendant through its actions discussed above breached the covenant of good faith and fair dealing.

    "Generally, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." <u>Pagtalunan v. Reunion Mortgage Inc.</u>, 2009 WL 961995, at *2 (N.D. Cal. April 8, 2009). Additionally, "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.' <u>Coyotzi v. Countrywide Financial Corporation</u>, 2009 W.L. 2985497, *7 (E.D. Cal. Sept. 16, 2009) (<u>quoting</u> <u>Agosta v. Astor</u>, 120 Cal.App.4th 596, 607 (2004)) (internal citations omitted.)

    To establish breach of the covenant of good faith, Plaintiff must show that (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. <u>Hergenroeder v. Travelers Property Ca. Ins. Co.</u>, 249 F.R.D. 595, 615 (E.D. Cal. 2008) (<u>citing</u> <u>Love v. Fire Ins. Exchange</u>, 221 Cal. App. 3d 1136, 1151 (1990). "Where benefits are fully and promptly paid, no action lies for breach of the implied covenant no matter how hostile or

egregious the insurer's conduct toward the insured may have been prior to such payment. . . absent an actual withholding of benefits due there is not breach of contract and likewise no breach of the insurer's implied covenant." Id. citing Love, 221 Cal. App. at 1151-52.

Taking the allegations of the complaint in the light most favorable, as the Court is required to do, the SAC nonetheless fails to plead a claim for breach of the covenant of good faith and fair dealing. Here, Defendant promptly accepted Plaintiff's tender of its defense, paid for Plaintiff's defense, proceeded with litigation, and ultimately reached a settlement favorable to and with no objection from Plaintiff.

Though the SAC alleges that at various points in the litigation Defendant questioned whether it had to defend and indemnify Plaintiff, questioned Plaintiff as to Plaintiff's knowledge of the option agreement, and altered the policy (an allegation that Defendant denies), the SAC does not allege that benefits were actually withheld. Plaintiff did not suffer an adverse judgment and Defendant fully funded the settlement with Andrews Dixon to clear the title for Plaintiff. While Plaintiff contends that it contributed to or helped "fund" the settlement by waiving any claims it may have had against Andrews Dixon, there is no allegation in the SAC that Plaintiff actually paid

any money or contributed anything of actual value toward the settlement.

Accordingly, Plaintiff has failed to plead a claim for breach of the covenant of good faith and fair dealing. Plaintiff has already amended the complaint twice, and the Court finds that further amendment would be futile. Thus, Defendant's motion to dismiss this claim is GRANTED WITH PREJUDICE.

III. ORDER

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED. The SAC is dismissed, with prejudice.

IT IS SO ORDERED.

Dated: September 27, 2010

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE